JACKSON A. LONG et al., Appellants, v. FANNIE H. RUCKER et al., Respondents.

**Kansas City Court of Appeals, June 27, 1912.**

1. **SLANDER OF TITLE: Damages.** Any person, who possesses an estate or interest in land, may maintain an action against any one who falsely and maliciously denies or defames his title, and thereby inflicts pecuniary damages upon him.

2. ————: **Landlord and Tenant.** A tenant may maintain an action against his landlord for a false and malicious publication of a slander against the tenancy, if damage has resulted from the slander.

3. ————: **Pleading and Proof.** In actions for slander of title it devolves upon the plaintiff to plead and prove that the words were false, maliciously uttered and resulted in pecuniary loss.

4. ————: **Malicious Intent: Evidence.** The action cannot exist without a malicious intent and to infer the existence of malice the evidence must support a reasonable inference that the representation was not only without legal justification, but was not innocently or ignorantly made.

5. ————: **Landlord and Tenant: Forfeiture of Lease.** A landlord has no right to forfeit a lease and relet the premises because the tenant *contemplates* a transfer of possession to the purchaser of his business.

Appeal from Boone Circuit Court.—*Hon. D. H. Harris,* Judge.

REVERSED AND REMANDED.

*Harris & Finley* and *Chas. J. Walker* for appellants.

All authorities agree that in order to entitle the plaintiff to recover in an action for slander of title he must show, first, the publication of slanderous statements by defendant, second, title in plaintiff and consequently that the statements were false, third, that the statements were uttered maliciously, and fourth, that special damage resulted to plaintiff. Linville v. Rhoades, 73 Mo. App. 217; Butts v. Long, 94 Mo. App. 691; Butts v. Long, 106 Mo. App. 313. The statements of defendant, W. H. Rucker, were slanderous and respondents are jointly liable therefor. Linville v. Rhoades, 73 Mo. App. 220; Butts v. Long, 94 Mo. App. 690; Kendall v. Stone, 2 Sanford (N. Y.), 269; Paull v. Halferty, 63 Pa. St. 46, 3 Am. Rep. 518. Under the statute it is held that a lease for one year with a privilege of renewal from year to year is a lease for more than two years. Jones v. Trust Co., 99 Mo. App. 433. The lease being assignable, the option to purchase is also assignable. Thus it is held that the option to renew and option to purchase are not merely personal covenant but rights which are assignable to the vendee of the lease. Napier v. Darlington, 70 Penn. 64; Blount v. Connolly, 110 Mo. App. 603. There were in fact written assignments or transfers of the lease to plaintiffs, but oral assignments would have been good under the facts in this case. The fact that any assignment was not in writing, or was by an insufficient writing, could not in any event be taken advantage of by the lessors, the defendants, who were not parties to the assignments. Roth Tool Co. v. Champ Spring Co., 93 Mo. App. 530; St. L. & Ry. Co. v. Clark, 121 Mo. 169; Geer v. Zinc Co., 126 Mo. App. 178.

*C. D. Corum, E. W. Hinton* and *W. M. Williams* for respondents.

Plaintiffs had no lease that could be assigned or transferred to creditors, purchasers or third persons. (a) They entered into a new contract with Fannie H. Rucker, after the 30th of March, 1909, for a term not exceeding two years. R. S. 1909, sec. 7880; Morse v. Roberts, 2 Cal. 515. (b) The rent was due and unpaid at the time the words for which the suit was brought were spoken by Rucker, and, thereafter, the premises were voluntarily surrendered and the rent never offered or tendered. R. S. 1909, sec. 7903. If, however, defendant was mistaken in his statements about the lease, there is no evidence of malice. It is not actionable for a person to assert his own rights at any time, and it is not sufficient for plaintiff, in such an action, to prove absence of right in the defendant. He must establish express malice. Butts v. Long, 106 Mo. App. 313; Linville v. Rhoades, 73 Mo. App. 223; Mayrose v. Adams, 12 Mo. App. 334; Harrison v. Howe, 67 N. W. (Mich.) 528; Cardon v. McConnell, 27 S. E. (N. C.) 109; Lovell Co. v. Houghton, 6 L. R. A. 363; Newell on Defamation, page 206, par. 5. Plaintiff wholly failed to show any pecuniary loss "as the direct and natural result of the publication of the words." 25 Cyc. 561; Burkett v. Griffith, 27 Pac. 527; Newell on Defamation, page 205, par. 3.

JOHNSON, J.—This is an action for slander of title to real estate. At the close of plaintiff's evidence the court gave a peremptory instruction to the jury to return a verdict for defendants, whereupon plaintiff took an involuntary nonsuit with leave and in due course of procedure brought the case here by appeal.

The evidence of plaintiff discloses the following state of facts: The defendants W. H. Rucker and Fannie H. Rucker are husband and wife. Mrs. Rucker is the owner of a business house in Columbia and her

husband was her agent in the transaction of business relating to the property. In April, 1906, Mrs. Rucker entered into a written contract of lease with Naysmith & Heiberger by the terms of which she leased the property to them for a term of five years from April 1, 1906, at a monthly rental of $65 payable in advance. The lease contained no provision relating to subletting or to its assignment by the lessees, but did provide that "in case said Rucker (lessor) shall desire to sell the property the second party (lessees) shall have the option to buy at the sale price or to surrender possession after thirty days' written notice to vacate premises." The lessees went into possession of the house under this lease and conducted a bakery and confectionery therein until July 5, 1907, when Naysmith sold his interest in the business and in the lease to plaintiff, J. A. Long and thereafter the business was continued by Long & Heiberger until March 30, 1909, when Heiberger sold his interest to plaintiff, Clarence A. P. Long, the son of J. A. Long. Thereafter the business was conducted by plaintiffs under the firm name of Long & Son. The firm of Long & Heiberger occupied the building as the tenants of Mrs. Rucker under the terms of the lease. Shortly after Clarence Long bought the interest of Heiberger, Mrs. Rucker called on plaintiffs and requested them to sign a written acceptance of the lease. Plaintiffs consented and signed the following agreement written on the lease:

"We the undersigned agree to the above contract and will be responsible for a continuance of the same until it expires, April 1, 1911."

The date of this endorsement is not shown but the parties concede it was within two years preceding April 1, 1911, the date of the expiration of the lease. Plaintiffs continued in the possession of the building until March 10, 1910, and paid the rent to the first of that month. Neither they nor their predecessors paid the rent promptly but defendant made no complaint

and accepted the delayed payments as a sufficient performance of the contract.

Plaintiffs became embarrassed in their pecuniary affairs. They owed a number of debts, including one of $1500, to Mr. Price, a banker, but their assets exceeded their liabilities. They endeavored to sell the business and eventually found a purchaser with whom on March 19, 1910, they entered into an agreement to sell their stock and the unexpired leasehold for $4200. The purchaser found it necessary to borrow part of the funds required to pay the purchase price and Mr. Price agreed to lend him the sum he needed. Defendants heard of the proposed sale and finding a tenant who was willing to rent the building at one hundred dollars per month, Mrs. Rucker entered into a contract of lease with him. Before this was done, defendant W. H. Rucker who, as stated, was the agent of his wife, had a conversation with one of plaintiffs in which he said, "You tell Kistler (the purchaser of the stock) he had better see us before he buys that stuff" and in reply to plaintiffs' answer that they had a lease on the building that did not expire for a year, replied, "You tell him he had better see us."

After defendants leased the building to another tenant, W. H. Rucker called at the bank and had a conversation with Mr. Price. We quote the following from Price's testimony:

" I telephoned Mr. Rucker that evening and told him that the creditors felt it to their interest to get someone to purchase those assets in a similar line of business and that I wanted to ask him not to do anything detrimental to the interests of the creditors and . . . he said he would come into the bank to see me Monday and he said he would do nothing until he did come in and see me. That was over the telephone. I next saw him on Tuesday. He came into the bank. On Tuesday I told Mr. Rucker that I was very much sur-

prised to hear that he had leased the building to other
parties, in fact, I had a good deal of doubt—I had
heard it but had a good deal of doubt that he had
leased it, but he told me he had leased it to other par-
ties and I told him that the creditors of Long & Son
would insist upon the continuance of the lease and he
said they had no lease whatever and we talked about
the matter, I think, for probably thirty minutes and
as our interests clashed a little bit he said— I told
him we were going to hold the building and he said:
'Anybody that went in there would have a fight' and
then I remember he said 'Damn 'em—he would show
'em.'—That was the last when I told him we would
insist upon the lease. I think that was the last talk
I had with Mr. Rucker about it. That was in the
bank on Tuesday afternoon. I don't know whether
I told him about the proposed sale to Kistler or not.
I told him we were expecting to continue the unexpired
lease and I don't know whether I told him about Kist-
ler or not, but possibly I did. When he said 'they have
no lease whatever' he was talking about the present
tenants of the building, Long & Son. We didn't con-
clude this deal with Kistler because we would not fur-
nish the money to Kistler to go there on a proposition
where he was to be fought on the lease.''

Mr. Kistler, the purchaser, testified in part:
''Well, I think along about—on Saturday, I think,
about the 19th of March, R. B. Price negotiated a sale
with me on the entire fixtures and stock, baker's out-
fit and, I believe, a term of lease on the building, I was
to pay $4200 for it. I was in a position and ready and
willing to pay that price at that time. Q. Why did
the deal fall through, Mr. Kistler? A. Well, I don't
know. I understood it was on account of not being
able to furnish me the building and turn the goods over
to me in the building. In my purchase I was to get
the building—the lease.''

The evidence shows very clearly that the sale to Kistler was not consummated for the reason that the assault made by Rucker on the leasehold title of plaintiffs in his conversation with Price convinced both Price and Kistler that plaintiffs would be unable to give the latter peaceable possession of the building.

The blocking of the sale put plaintiffs at the end of their resources. They were compelled to turn the stock and keys over to Price for the benefit of their creditors and subsequently the stock was sold at auction under a chattel mortgage given by them to Price. It realized about twelve hundred dollars. Price turned over the keys to defendants who put their new tenant in possession. Defendants made no demand of plaintiffs for the payment of the rent for March, 1910. The petition alleges "that the defendants became aware of the negotiations of the plaintiffs for the sale of their said business, stock of goods, fixtures and rights in said premises and knew that plaintiffs were about to consummate the sale to said J. W. Kistler through the said R. B. Price, Jr., cashier as aforesaid; that said defendants, knowing the facts aforesaid, and unlawfully and wrongfully contriving to get possession of said premises, with a reckless disregard for the injurious consequences that might result from such wrongful actions to the said property and interest of these plaintiffs in said premises, did maliciously and without any probable cause seek to prevent the sale aforesaid, and to that end the said W. H. Rucker, while acting in behalf of himself and his said wife with reference to the possession of said premises, did in said city of Columbia, on or about the 29th day of March, 1910, and before the consummation of said sale to said Kistler, wrongfully, maliciously, falsely and without any probable cause, represent and state in the presence and hearing of said R. B. Price, Jr., that 'they (meaning the plaintiffs) have no lease whatever,' that 'anybody that goes in there (meaning into said premi-

ses) will have a fight,' and, upon being told that these plaintiffs expected to hold said premises under said lease, he also stated to said R. B. Price, Jr., 'Damn 'em (meaning plaintiffs), I will show them.' "

The plaintiffs further state that the said W. H. Rucker well knew and intended that the words so spoken to said R. B. Price, Jr., would prevent, or tend to prevent, a sale of plaintiff's said property and lease.

The plaintiffs further state that by reason of the aforesaid wrongful acts and of the false and malicious statements aforesaid, they were prevented from making sale of their said business, stock of goods, fixtures and of their interest in said premises under said lease to the said J. W. Kistler; that the negotiations for the aforesaid sale to said J. W. Kistler were carried on orally and plaintiffs had no written contract therefor with said Kistler; that said Kistler was unable and unwilling to make said sale unless he could borrow the money aforesaid from said R. B. Price, Jr., cashier of said bank as aforesaid; that on account of the aforesaid wrongful, false and malicious statements of the defendant, W. H. Rucker, the said R. B. Price, Jr., as such cashier, refused to make the loan aforesaid to said J. W. Kistler and said Kistler thereupon refused to consummate said sale, on account of such refusal of said Price to furnish said money.

The plaintiffs further state that upon plaintiffs' failure as aforesaid to consummate said sale to said Kistler, plaintiffs' creditors proceeded immediately to collect their claims, and plaintiffs were forced to dispose of their said business, stock of goods and fixtures, and were forced to dispose of the same at a price much less than the amount which said Kistler had agreed to pay therefor, to-wit, at the sum of about $1200, that but for the aforesaid wrongful, false and malicious acts and statements of the defendants they would have been able to consummate said sale to said Kistler at the price and sum of $4200, whereas plaintiffs were

able to procure, and did receive and realize, only the sum of $1200, for their said stock of goods, business and fixtures, and were unable to dispose of their said lease at any price; and that said premises, at the time of the wrongful acts aforesaid, were reasonably worth the sum of $100 per month, instead of the sum of $65 per month which plaintiffs had been paying and were to pay under the terms of said lease.

And plaintiffs further state that "by reason of the aforesaid wrongful acts and of the aforesaid false and malicious statements of the defendants, they were forced to abandon their calling and business and have been rendered unable to liquidate their indebtedness and have been publicly exposed to business failure, their reputation for business integrity has been greatly impaired, and they have suffered great humiliation thereby."

The prayer is for five thousand dollars actual and two thousand dollars exemplary damages. The answer is a general denial.

There can be no question of the right of a person who possesses an estate or interest in land to maintain an action against anyone who falsely and maliciously denies or defames his title and thereby inflicts pecuniary damage upon him. [Linville v. Rhoades, 73 Mo. App. 217; Butts v. Long, 94 Mo. App. 687; Butts v. Long, 106 Mo. App. 313.]

It is said in Townshend on Slander and Libel (4 Ed.), section 204: "When the plaintiff possesses an estate or interest in any real or personal property an action lies against anyone who maliciously comes forward and falsely denies or impugns the plaintiff's title thereto, if thereby, damage follows to the plaintiff." And a tenant may maintain an action against his landlord for a false and malicious publication of a slander against the tenancy if damage has resulted to the tenant from the slander. [Harrison v. Howe, 67 N. W.

Long v. Rucker.

527; Smith v. Spooner, 3 Taun. 246; Like v. McKinstry, 41 Barb. 186; Hopkins v. Drowne, 41 Atl. 567.]

The law relating to false statements concerning one's title to property belongs properly to the law of deceit rather than to that of defamation. [Odgers on Libel & Slander, section 138; Hopkins v. Drowne, supra.] And it devolves on the plaintiff in such cases to plead and prove that the words were false, were maliciously uttered and resulted in pecuniary loss to the plaintiff. [Butts v. Long, 94 Mo. App. l. c. 691.] Of course it would not be actionable for anyone, in good faith, to assert his own right to property and to assail the claim of title made by another. As is well said by Judge Ellison in Linville v. Rhoades, supra:

"We are not unmindful that great abuse, as well as great wrongs, might be perpetrated against parties making claims to things in which they have an interest, if they are to be mulct in damages which may flow from such claim. To guard against such injustice it is, as before stated, necessary to show that the party charged acted not merely ignorantly or mistakenly, but maliciously and falsely, without so much as a probable cause, in the light of his surroundings and situation, to believe in the truth of his statement."

It is incumbent on the plaintiffs to show that defendants could not honestly have believed in the representation. The action cannot exist without a malicious intent and to infer the existence of malice, the evidence of plaintiffs must support a reasonable inference that the representation not only was without legal justification or excuse but was not innocently or ignorantly made. [Harrison v. Howe, supra.]

But such inference may rest on a foundation of circumstantial evidence and proof of a lack of probable cause would support an inference that the representation was not innocently made out of stupidity or ignorance, but was known to be false. With these rules, in mind, we pass to the questions of whether or not

the evidence tends to show that defendants falsely
and maliciously represented that plaintiffs had no
lease and thereby seriously damaged them.

The written lease under which plaintiffs held pos-
session of the building had a year to run. The original
lessees had transferred their interests in the lease to
plaintiffs and defendants had consented to the trans-
fers and had required plaintiffs to sign a written ac-
ceptance endorsed on the lease. Plaintiffs, therefore,
were the tenants of Mrs. Rucker under the lease and
unless plaintiffs had forfeited the right to remain in
possession defendants had no semblance of an excuse
for leasing the property to another and defaming the
plaintiff's right to possession. It appears to be the
idea of defendants that plaintiffs had no right to sell
and assign the lease to Kistler and, therefore, that
plaintiffs' agreement to sell their stock and leasehold
*ipso facto* worked a forfeiture of the lease. In support
of this view counsel cite us to section 7880, R. S. 1909,
which provides that "no tenant for a term not ex-
ceeding two years . . . shall assign or transfer
his term or interest . . . without the written
assent of the landlord" and contend that since the
written acceptance of the lease by plaintiffs was made
within two years of the expiration of the term, plain-
tiffs were tenants for a term of less than two years
and, therefore, could not assign the lease to Kistler
without the written consent of Mrs. Rucker.

The lease was for a term of five years and the
written acceptance did not constitute a new letting—
a new tenancy—but, as its language plainly shows,
was merely a written acknowledgment and confirma-
tion of the assignment of the lease to plaintiffs by
the original lessors and of the substitution of plaintiffs
as lessees. The statute had no application to this ten-
ancy and since the terms of the lease did not forbid
its sale and transfer plaintiffs had as much right to

sell and assign it as they had to sell or assign any other property belonging to them.

Moreover had the tenancy in question come within the operation of the statute, the mere agreement of plaintiffs to assign the lease and to surrender the possession of the building to the assignee at some future time, of itself, would not work a forfeiture as long as plaintiffs remained in possession of the property as lessees. Forfeitures are not favored by the law and the right to claim one always must be strictly construed. There was no reasonable basis for the claim that the contemplated transfer of possession to the purchaser of plaintiffs' stock clothed Mrs. Rucker with the right to forfeit the lease and relet the premises.

There is even less merit in the contention that the default of plaintiffs in the payment of the rent for the month of March forfeited the lease. It is held by the Supreme Court that mere nonpayment of rent will not support an action in ejectment. [Tarlotting v. Bokern, 95 Mo. 541.] "In ejectment," says Judge BRACE, "plaintiff cannot recover without showing that at the time his suit was commenced he was entitled to the possession of the premises sued for. The fact that rent is due, has been demanded, and is unpaid, does not extinguish the relation of landlord and tenant, determine the tenant's term, or give the landlord a right of entry; the only right these facts confer upon the landlord is to institute a summary proceeding before a justice of the peace against the tenant, requiring him to show cause why possession of the property should not be restored to the plaintiff. [R. S., secs. 3097, 3098.] If the tenant appears and shows that the rent has been paid, or on the hearing of the cause tenders the amount of the rent due and costs, that ends the proceeding, and the term of the tenant continues. If he does neither, then the justice may render judgment in favor of the landlord for the recovery of the premises, and

that judgment terminates the tenancy. [R. S., secs. 3098, 3100.]"

As stated in the quotation, the statutes (section 7906), expressly gives the tenant the right to continue in possession of the premises by the payment of the rent at any time before the hearing of the cause by the justice. Defendants had not demanded payment of the rent nor brought suit under the statutes for possession. Clearly plaintiffs had not forfeited the lease and we think the evidence is sufficient to carry to the jury the issue of whether or not the representation which had no legal foundation was maliciously made.

Further we find the evidence tends to show that as a direct consequence of the false representation, plaintiffs suffered special damages which, it is said "are the gist of an action for slander of title." [25 Cyc. 561.]

Should the jury find the representation was malicious, plaintiffs would be entitled to recompense for the actual loss sustained in consequence of the tort and the jury should be authorized to award plaintiffs exemplary damages.

The judgment is reversed and the cause remanded. All concur.