Harry TONGAY and June Tongay, Plaintiffs-Appellants,

v.

FRANKLIN COUNTY MERCANTILE BANK, et al., Defendants-Respondents.

No. 52439.

Missouri Court of Appeals, Eastern District, Division One.

Aug. 11, 1987.

Kenneth B. Byrne, St. Louis, for plaintiffs-appellants.

James W. Erwin, St. Louis, John Robert. O'Connor, Washington, for defendants-respondents.

KELLY, Judge.

Harry Tongay and his wife June appeal from the judgment of the trial court granting summary judgment in favor of respondents Franklin County Mercantile Bank and Mercantile Bancorporation, Inc. on count two of appellants' petition seeking actual and punitive damages in their action against respondents for slander of title. Count one of the petition which sought cancellation of a deed of trust was dismissed without prejudice by appellants. The judgment is reversed and remanded.

Summary judgments are authorized only when there is no issue of any material fact and the party requesting it is entitled to it as a matter of law. *Schneeberger v. Hoette Concrete Const. Co.*, 680 S.W.2d 301, 303 (Mo.App.1984); *Bishop v. United Missouri Bank of Carthage*, 647 S.W.2d 625, 626[1] (Mo.App.1983). Our review of the record is made in the light most favorable to the nonprevailing party. *Bishop,* 647 S.W.2d at 626[2].

Appellants brought suit against respondents in a two count petition for slander of title arising from respondents' actions in recording and maintaining a deed of trust against appellants' property despite respondents' alleged full and complete knowledge that the note secured by the deed of trust was forged.

Count one of the petition made the following allegations. Respondent Franklin County Mercantile Bank ("Bank") is a wholly owned subsidiary of respondent Mercantile Bancorporation, Inc. ("MBI"), a national holding company. The Tongays own certain real estate in Franklin County, Missouri. They received a letter dated February 7, 1980, from Bruce A. Smith, a trust officer and general counsel for respondent Bank, informing the Tongays they owed the Bank $18,000.00 on a note secured by a deed of trust on their property. Mrs. Tongay met with Mr. Smith February 19 and informed him that the note and deed of trust were a fraud and a forgery, and demanded they be cancelled and removed of record from their property. She was told that [respondents] "knew and were aware that the note and deed of trust were fictituous, fraudulent and forged." A copy of the note, attached as an exhibit to the petition, was dated October 26, 1978, and was secured by a purported deed of trust of the same date on the Tongays' property. The note had been recorded on or about December 6, 1978.

The note was allegedly assigned on December 5, 1978, by Wilson Development Co., Inc., by Harry L. Wilson, its president, to Charles L. and Marilyn Hoffmann. On the same day, the Hoffmanns assigned the note to respondent Bank. The Tongays averred that the forged note and deed of trust were a "trespass, cloud and slander upon the title of the property of [appellants] and ... severely, permanently and irreparably damaged [appellants] in the use of their property as [appellants] were denied the right to borrow against their property or to sell their property."

The Tongays alleged that respondents agreed by letter of April 14, 1982, from respondents' attorney to release the encumbrance if the Tongays would execute an affidavit of the fraud. The Tongays complied.[1] About two months later, respondents acknowledged receipt of the affidavit and that the releases had been prepared.

Almost a year later on May 23, 1983, the Tongays' attorney directed a letter to respondents again requesting that the encumbrance shown on their property be released of record. On July 21, 1983, the Tongays' received a letter from another attorney for respondents stating that respondents would not release the encumbrance on the Tongays' property. The Tongays then alleged that the note and deed of trust were neither signed nor authorized by them and that they were totally unaware of the existence of the fraudulent instruments prior to respondents' initial communication in the letter of February 7, 1980. Count one of the petition also alleged respondents "did wrongfully and maliciously record such fraudulent and forged deed of trust with the intent that it be a lien and restriction upon the property of [appellants] and [respondents] knew or should have known at the time of recording that said note and deed of trust was fictitious, fraudulent and a forgery." They alleged further damage by respondents' "maliciously and wrongfully and intentionally refusing to release said forged deed of trust after being put on notice in February, 1980, that said document was a forgery."

As a direct and proximate result of respondents' wrongful conduct, appellants claimed they suffered damages. Appellants' damages were set out as follows: 1) their property was burdened with the fraudulent debt and deed of trust; 2) their property was not saleable due to the fraudulent debt and deed of trust; 3) their ability to borrow against their own property was restricted by the fraudulent debt and deed of trust; 4) they each suffered nervousness, loss of sleep and humiliation; 5) and each of them has been caused to incur substantial attorney's fees, expenses and loss of their own time to remove the fraudulent debt and deed of trust from their property. They alleged these damages amounted to $15,000.00.

They also sought punitive and exemplary damages because respondents' actions "constitute willful, malicious, intentional, wrongful and oppressive action." Their prayer in count one sought cancellation and release of the deed of trust previously recorded and that the note and deed of trust be declared null and void.

Incorporating by reference, count two realleged and restated the twenty-three paragraphs contained in count one. Count two added that respondents were aware that "they were holding a fictitious, fraudulent and forged document that was a trespass on the real property, home and residence" of appellants and that these actions would cause appellants "great mental and physical suffering" and "would deprive them of their lawful right to the use and enjoyment of their home and property." They also alleged the note and deed of trust on their property denied them the right to use their property, and that respondents' "willful, malicious, reckless and indifferent conduct toward [appellants'] property and home" denied them "the right of the free and unobstructed use of their property and home."

They claimed that respondents' "willful, malicious, reckless and indifferent attitude towards [appellants] in holding said bogus note and deed of trust over their heads caused [appellants] great anguish and fear that their sudden death would leave a great burden on their children and a burden which they could not disprove." They further stated that respondents' refusal to release the note and deed of trust was "nothing but outright blackmail and an attempt to force [appellants] to pay an obligation that was not bonafide in order to clear the property and home."

Appellants averred that because of respondents', "willful, malicious, reckless, unwarranted and indifferent conduct toward [appellants] and the trespass of their title

---

1. A copy of the affidavit is attached as an exhibit; however, it is not signed.

and property, [appellants] have suffered anxiety, unrest, upset, nervousness and have suffered loss of sleep and have been denied peace of mind", amounting to fifteen thousand dollars in damages. Appellants concluded, as in count one, that respondents' actions constituted "willful, malicious, intentional wrongful and oppressive action and require the imposition of punitive and exemplary damages." They prayed for fifty thousand dollars actual damages and one million dollars punitive damages.

Respondents each filed separate motions for summary judgment. Each motion was accompanied by a supporting memorandum. Franklin Bank also attached an affidavit of its chief officer John H. Lohan. Appellants filed a four page response to the motions for summary judgment asserting that respondents misconstrued appellants' slander of title action as one for outrageous conduct or emotional or mental distress and that the affidavit was insufficient because it stated conclusions, not facts, and because it stated that Franklin Bank had no knowledge of the forgery.[2] Appellants also noted in their response that Franklin Bank's "offer of judgment" previously filed with the court patently contradicted the Bank's assertion of its lack of knowledge of the forgery. Appellants filed no affidavits in opposition to the motions for summary judgment. Respondent Mercantile reiterated in a reply memorandum its earlier arguments in favor of the motions for summary judgment. The trial court determined "on the basis of the pleadings; depositions; responses to interrogatories; and affidavit in support of summary judgment" that no genuine issue of material fact existed and it granted summary judgment for respondents on count two but not count one.[3] Appellants them-

selves subsequently dismissed count one of their petition without prejudice and then filed this appeal.

Appellants challenge the propriety of the trial court's action in granting summary judgment. Their first point relied on asserts numerous issues of fact remained in dispute; further, proof that respondents were entitled to judgment as a matter of law was not "unassailable" within Rule 74.04(h).

Respondents answer that summary judgment was proper because they view count two of appellants' action not as a slander of title action but as one for outrageous conduct or emotional or mental distress. Respondents focus on the allegations in the Tongays' petition that respondents were aware that the recording of the purportedly forged deed of trust would cause the Tongays "great mental and physical suffering"; that respondents' actions caused the Tongays "great anguish and fear that their sudden death would leave a great burden on their children and a burden which they could not disprove"; and, finally, that the Tongays were damaged because they "suffered anxiety, unrest, upset, nervousness and have suffered loss of sleep and have been denied peace of mind." Having described the petition as an action for outrageous conduct or mental distress, respondents then highlight appellants' responses to interrogatories that neither appellant had seen a physician for the alleged emotional distress or the alleged outrageous conduct. Citing *Bass v. Nooney*, 646 S.W.2d 765 (Mo. banc 1983), where our supreme court held that a claim for emotional or mental distress required the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity to be medically significant, *id.* at 772–73, respondents conclude appel-

---

**2.** Appellants' response, although included in the legal file, bears no date reflecting its filing with the trial court. Neither do the minutes show when, or if, it was filed, nor does the circuit court clerk list appellants' response in its certification of the documents duly authenticated for the legal file.

**3.** The depositions on file before the trial court were those of John K. Tyler, Dennis Elbert Wilson, and Charles Leroy Hoffman. Respondents' supplemental record on appeal included the depositions of Tyler and Wilson, but not of Hoffman. They also included that of Harry L. Wilson; however, that deposition was filed in March 1987 with the trial court and was not before it when it rendered summary judgment in 1986.

lants' claim for outrageous conduct or emotional distress cannot be substantiated.

We disagree with respondents' perspective of the pleadings. While these paragraphs, when reviewed in isolation, bespeak the kind of allegation found in an action for outrageous conduct, we review the petition in its entirety, and not selected bits and pieces. From our vantage point, appellants' petition reveals an action for slander of title was sufficiently alleged.

■ If the allegations of a petition involve substantive principles of law which may entitle the pleader to relief, it will be sustained even though the cause of action is imperfectly or defectively stated. *McDonald v. Amoret Farm Supply*, 634 S.W.2d 255, 256 (Mo.App.1982); *Euge v. Golden*, 551 S.W.2d 928, 932[8] (Mo.App. 1977). Three things are necessary to maintain the action for slander of property or of title: 1) the words must be false; 2) they must be maliciously published; 3) they must result in pecuniary loss or injury to the plaintiff. *Butts v. Long*, 94 Mo.App. 687, 68 S.W. 754, 755 (Mo.App.1902).

In *Euge* where the plaintiff alleged a false deed of trust was recorded against his property with an intent to defraud him, this court iterated that "[r]ecordation of a false instrument does state a claim under slander of title." 551 S.W.2d at 932. We reversed the trial court's dismissal of the plaintiff's petition holding that his allegations stated a claim for slander of title. *Id.*

■ Appellants' petition, despite respondents' characterization, sufficiently avers a claim under slander of title. As we stated in *Euge:* "... although plaintiff may have difficulty proving his allegations, he should be afforded his day in court ..." 551 S.W.2d at 932.

Count two incorporated by reference the allegations of count one. These two counts, reviewed in tandem, reflect that the Tongays clearly averred that the deed of trust recorded was forged, *i.e.*, the words were false.

The third element that the Tongays sustained a pecuniary loss or injury was also sufficiently averred. Respondents do not dispute that Missouri does not require proof of special damages. *See Greenlake Inv. Co. v. Swarthout*, 161 S.W.2d 697, 699[5] (Mo.App.1942). Even where a petition fails to allege special damages and even though the plaintiff suffers no substantial actual damages, the plaintiff would be entitled on proof of such charges to recover an award of nominal actual damages. *McDonald*, 634 S.W.2d at 257. An award of at least nominal damages could in turn sustain an award of punitive damages. *Id.* [3]. Thus, we have no difficulty in determining the third element was met by even a cursory review of appellants' petition.

■ Respondents stress that if we construe count two as a claim for slander of title, as we do, that summary judgment was still proper because undisputed material facts established that respondents did not act with actual malice in recording the deed of trust. Respondent is correct that an action for slander of title cannot exist without a malicious intent. *Long v. Rucker*, 166 Mo.App. 572, 149 S.W. 1051, 1054 (1912). To infer the existence of malice, the evidence of plaintiffs must support a reasonable inference that the representation not only was without legal justification or excuse, but was not innocently or ignorantly made. *Id.* [3]. Such inference may rest on a foundation of circumstantial evidence and proof of a lack of probable cause would support an inference that the representation was not innocently made out of stupidity or ignorance but was known to be false. *Id.* Where there is sufficient evidence or where there may be a fair difference of opinion on the issue of malice, the question whether the defendant in an action for slander of title was actuated by malice is one of fact for the jury. *Id.* at 1053–55.

In *Long*, where the evidence showed that the lessor's agent by his language and conduct prevented the sale of the plaintiff's leasehold interest, that the attack on the plaintiff's title was unnecessarily determined and vitriolic (although up to that time the plaintiff had been recognized as the lessee) and that the defendants had a

motive in preventing the sale so that they might rent to another at a higher rental, a jury verdict finding malice was held warranted. *Id.* at 1054–55.

Likewise, in *Butts v. Long,* 106 Mo.App. 313, 80 S.W. 312 (1904), it was stated:

The law has been laid down by an eminent authority on this subject, that it is not actionable for any man to assert his own rights at any time, and though defendant may fail to prove such right, if at the time he spoke he supposed in good faith that he had such right, no liability is imposed; that it is not sufficient for a plaintiff to prove in such action absence of right in defendant, he must also offer evidence of express malice, and that defendant could not honestly have believed in existence of right on his part or had no reasonable cause for such belief, and even then the *jury* are not bound to find malice, for a defendant, though acting stupidly, may have been prompted by innocent motive.

80 S.W. at 313 (emphasis ours).

Thus, both *Long* and *Butts* recognize that in a slander of title action whether the defendant acted with malice is a *jury* question where a difference of opinion exists on the issue of malice.

■ Despite respondents' assertions to the contrary, our review of the pleadings, interrogatories, depositions, motions for summary judgment and the accompanying affidavit before the trial court viewed in the light most favorable to the Tongays do not establish that no material facts are disputed on the issue of malice.

In the affidavit accompanying the Bank's motion for summary judgment, the bank officer attested that "no agent or employee of Franklin County Mercantile Bank has or had actual knowledge of any alleged impropriety of the alleged Tongay note and deed of trust which claim has been raised in plaintiff's First Amended Petition." While appellants did not file any counter affidavits or move to strike the affidavit filed in respondents' behalf, they did argue to the trial court, as well as here, that the officer's affidavit was conclusory and that he lacked personal knowledge of the facts stated in the affidavit. Supporting their arguments were the answers to appellants' interrogatories signed by the affiant that admitted four former employees had certain knowledge of the purported note and deed of trust. These employees' knowledge of the events pertinent to the execution and recording of the deed of trust and note on appellants' property may be germaine to the issue of malice. Further, the Tongays' petition had contained as an exhibit a letter from Mr. Smith, the Bank's attorney, dated April 14, 1982, which agreed on behalf of the Bank to release the encumberance on their property created by the purported Note and Deed of Trust. However, his letter was followed by a later letter dated July 21, 1983, from a different attorney for the bank recanting its earlier position that the Bank would release the deed of trust. The July letter stated that the Bank still anticipated payment from the Tongays on the note despite the Tongays' avowal since February 1980 that their signatures had been forged on the instruments recorded December 6, 1978, with the Franklin County Recorder of Deeds. The Bank did not release the deed of trust at issue until September 10, 1984. From these factual inconsistencies in the record, one could reasonably conclude a difference of opinion exists on the issue of whether respondents acted with malice in recording and maintaining the deed of trust against appellants' property. Based on the record before us, we conclude the trial court improvidently granted summary judgment.

Reversed and remanded.

SATZ, P.J., and CRIST, J., concur.