

# In the
# Missouri Court of Appeals
# Western District

BRENDA DUMLER, ET AL.,

        **Respondents,**

v.

THE NATIONSTAR MORTGAGE, LLC,

        **Appellant.**

WD81446

OPINION FILED:

July 2, 2019

Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Jack Richard Grate, Judge

Before Division Two:
Thomas N. Chapman, Presiding Judge, Mark D. Pfeiffer, and Cynthia L. Martin, Judges

The Nationstar Mortgage, LLC, (Nationstar) appeals from the circuit court's judgment

quieting title to Brenda Dumler's (Brenda) property[1] and awarding her damages for slander of

title based upon Nationstar's refusal to release a deed of trust that purported to maintain a

mortgage lien on Brenda's real estate. Nationstar argues that Brenda's actions to quiet title and

for slander of title were barred by the applicable statutes of limitation; and that the judgment for

slander of title was not supported by substantial evidence. We affirm and remand solely for the

---

[1]We refer to Brenda and to her deceased husband by their first names to avoid confusion. No disrespect is
intended. Brenda transferred the property prior to suit into a trust over which she serves as trustee. The trust is also
a party to this appeal. For simplicity, our references to Brenda should be read to include the trust, where
appropriate.

circuit court to determine Brenda's reasonable attorneys' fees on appeal and enter judgment accordingly.

## Facts & Procedure[2]

Brenda and her husband Emmanuel Dumler (Emmanuel) purchased a home in Lee's Summit, Missouri. Brenda and Emmanuel owned the property as tenants by the entirety. In 2005, Emmanuel filed a Uniform Residential Loan Application, seeking to borrow $624,000.00 from Countrywide Bank, N.A., (Countrywide) using the couple's Lee's Summit home as collateral. On December 21, 2005, while Brenda was recovering from an emergency appendectomy, Emmanuel traveled to St. Louis, Missouri, to finalize the residential loan documents.

Emmanuel executed an Adjustable Rate Note (Note), promising to repay the principal loan of $624,000.00 plus accrued interest. On December 21, 2005, Emmanuel also executed the deed of trust (Deed of Trust), granting Countrywide a lien interest in the couple's home as security for the loan. Brenda did not execute the Note or Deed of Trust, was not present for the closing of the loan, and did not intend to grant Countrywide an interest in the couple's home. Subsequently, Countrywide was acquired by Bank of America.

Emmanuel made the monthly payments ($4,071.59) on the loan until his death in May of 2013. Following Emmanuel's death, Brenda went to Bank of America to find out where she stood with respect to the loan that Emmanuel had procured. She was informed by Bank of America employees that they could not discuss the loan with her because her "name was not on the loan."

---

[2] "On appeal from a court-tried case, the facts are viewed in the light most favorable to the judgment." *Howard Cty. Ambulance Dist. v. City of Fayette*, 549 S.W.3d 1, 3 n.2 (Mo. App. W.D. 2018).

In July 2013, Nationstar acquired all of the servicing and ownership rights to the Note held by Bank of America. In January 2015, Brenda's counsel sent a letter to Nationstar requesting that it contact him "to discuss [Nationstar's] attempt at collecting what appear[ed] to be an invalid mortgage." In April 2015, Brenda's counsel sent Nationstar another letter, advising that the mortgage issued to Emmanuel was invalid in that it purported to encumber real property that had been owned by Brenda and Emmanuel as tenants by the entirety, but was signed by Emmanuel alone. The April 2015 letter requested that Nationstar "remove the lien filed in Jackson County, Missouri on 19 January 2006…" In June 2015, CSM Foreclosure Trustee Corporation (CSM) (which had been retained by Nationstar to assert its interests under the Note and Deed of Trust) sent a letter to Brenda, informing her that she had not signed the Deed of Trust and that her "legal interest in the property remain[ed] outstanding." In an attempt to reform the original Deed of Trust, CSM enclosed with the letter a Consent and Ratification Agreement, which provided, among other things, as follows:

> Brenda Sue Dumler hereby grants and conveys to Countrywide Bank, N.A. and its successors and assigns, a complete lien interest in the Premises equal and commensurate with that conveyed by the Deed of trust as and if she had originally signed the document.

The letter threatened Brenda with a lawsuit if she did not execute the ratification agreement.

In July 2015, Brenda's counsel sent a letter responding to CSM's June correspondence. The letter advised CSM that Nationstar had no "basis in law or equity to assert a claim against" Brenda or against Emmanuel's estate (as the period for filing claims had run). Brenda's counsel also demanded that Nationstar "remove [its] invalid lien by filing the appropriate release with the recorder of deeds office for Jackson County, Missouri." Nationstar did not release its lien on Brenda's real property.

3

On May 5, 2016, Brenda filed suit against Nationstar to quiet title to the home, for slander of title, for a declaratory judgment declaring the Deed of Trust invalid, and for attorneys' fees. In response, Nationstar filed a counterclaim for declaratory relief which asked the circuit court to declare that its Deed of Trust represented a valid lien against the property. At trial, Brenda testified that she had accumulated approximately $30,000.00 in attorneys' fees as a result of her efforts to have Nationstar's lien set aside and asked the circuit court to quiet title by declaring the property hers (free and clear of Nationstar's lien) so that she could sell it.

The circuit court entered judgment in favor of Brenda and against Nationstar, finding that Brenda did not sign the Note or Deed of Trust, declaring Brenda the sole owner of the property, and declaring Nationstar's Deed of Trust to be an invalid lien against the property. The circuit court also found Nationstar liable for slander of title in that it "wrongfully declared an interest in the property by refusing to remove its claim to the title to the home and publishing those statements to the public through the Jackson County, Missouri Recorder of Deeds in the form of the Deed of Trust." The circuit court found that Brenda did not plead or prove specific damages. It awarded Brenda $25,000.00 as damages for slander of title and $5,000.00 in attorneys' fees.

Nationstar timely appeals.

### *Discussion*

Nationstar raises three points on appeal. It argues (1) that the circuit court erred in entering its judgment quieting title in Brenda's name and setting aside Nationstar's lien because the action was barred by the ten-year statute of limitations; (2) that Brenda's action for slander of title was barred by the five-year statute of limitations; and (3) that the judgment for slander of title was not supported by substantial evidence in that the actions being asserted by Brenda were barred by the statute of limitations, Brenda failed to show that Nationstar maliciously published

4

any statements as it did not record the Deed of Trust, and Brenda failed to prove pecuniary loss to support the award of damages.

In its first point on appeal, Nationstar argues that Brenda's action to quiet title was time-barred because the Deed of Trust was recorded on January 19, 2006, and Brenda did not file suit until May 5, 2016.[3] Nationstar's point on appeal ignores that, in addition to resolving Brenda's quiet title action, the judgment resolved the parties' competing declaratory relief claims which asked the circuit court to determine the validity of Nationstar's Deed of Trust. The resolution of the declaratory relief claims effectively controlled the circuit court's resolution of the quiet title action. Nationstar concedes that Brenda's right to seek declaratory relief regarding the actual controversy (validity of the Deed of Trust) arose after Emmanuel's death, and that her declaratory action was timely filed. More to the point, Nationstar filed an affirmative claim seeking resolution of the same actual controversy. Nationstar's failure to challenge the judgment's determination of the competing declaratory relief actions in favor of Brenda and against Nationstar is fatal to its appeal. *STRCUE, Inc. v. Potts*, 386 S.W.3d 214, 219 (Mo. App. W.D. 2012) (holding that the failure to challenge a finding and ruling that would support the conclusion complained about is fatal to an appeal).

During oral argument, Nationstar acknowledged that it had not appealed the judgment's determination of the declaratory relief claims. Nationstar argued, however, that we should resolve an alleged conflict between the statute of limitations for quiet title actions (which Nationstar argues commenced to run on the recordation of its Deed of Trust) with the statute of limitations for declaratory relief which Nationstar concedes began to run sometime after Emmanuel's death. This alleged conflict, assuming *arguendo* that it even exists, is not raised,

---

[3] "Whether a statute of limitations applies to a given cause of action is [] reviewed de novo." *Davison v. Dairy Farmers of Am., Inc.,* 449 S.W.3d 81, 83 (Mo. App. W.D. 2014).

however, as a point on appeal, preserving nothing for appellate review. *Jones v. City of Kansas City*, 569 S.W.3d 42, 50 n.6 (Mo. App. W.D. 2019) (holding that pursuant to Rule 84.04(e), we do not address arguments not fairly encompassed in a point on appeal). In fact, the only mention of declaratory relief in the argument portion of Nationstar's brief is its assertion, in the context of distinguishing cases relied on by Brenda, that those cases are not applicable because they addressed declaratory judgment.

Because the circuit court's judgment declaring Brenda to be the sole owner of the property can be affirmed based on the trial court's unchallenged declaration that Nationstar's Deed of Trust is not a valid lien on the property, we need not address whether Brenda's quiet title action was time-barred.

Point I is denied.

For its second point, Nationstar contends that Brenda's claim for slander of title was barred by the five-year statute of limitations set forth in § 516.120. Our standard of review is *de novo*. *Davison v. Dairy Farmers of Am., Inc.,* 449 S.W.3d 81, 83 (Mo. App. W.D. 2014). Nationstar failed to include the appropriate statutory provision in its Amended Answer, and Brenda therefore argues that the defense has not been preserved for our review. We disagree.

In its "Trial Brief of Defendant Nationstar Mortgage, LLC" filed prior to trial, Nationstar specifically cited § 516.120(4) and the five-year statute of limitations that section imposes on claims for slander of title.[4] In response, Brenda did not argue that the defense had been waived,

---

[4] "An action for slander of title is governed by the five-year statute of limitations in § 516.120(4)." *Eckel v. Eckel*, 540 S.W.3d 476, 486 (Mo. App. W.D. 2018). Section 516.120(4) provides:

Within five years:
…

An action for taking, detaining or injuring any goods or chattels, including actions for the recovery of specific personal property, or for any other injury to the person or rights of another, not arising on contract and not herein otherwise enumerated[.]

but rather chose to address its merits. Rule 55.33(b) provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." *See also Hanff v. Hanff*, 987 S.W.2d 352, 357 (Mo. App. E.D. 1998) (finding that issue was tried by implied consent where the defendant failed to plead a statutory affirmative defense in her answer, but the defendant argued the statute's application in a motion for summary judgment and the plaintiff made no objection). Nationstar's statute of limitations affirmative defense under § 516.120(4) respecting the slander of title claim was tried with Brenda's implied consent; and is therefore preserved for our review.

Though Nationstar was entitled to assert that affirmative defense, we find that the statute of limitations did not bar Brenda's claim respecting slander of title. "In Missouri, a statute of limitations begins to run when the cause of action accrues." *Hemar Ins. Corp. of Am. v. Ryerson*, 108 S.W.3d 90, 94 (Mo. App. E.D. 2003). "It does not necessarily begin when the liability is created." *Id*. at 95.

Section 516.100 provides as follows:

> Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided, that for the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained.

In interpreting this provision, the Supreme Court of Missouri announced the following general rule:

> [I]f the wrong done is of such a character that it may be said that all of the damages, past and future, are capable of ascertainment in a single action so that the entire damage accrues in the first instance, the statute of limitation begins to run from that time. If, on the other hand, the wrong may be said to continue from day to day, and to create a fresh injury from day to day, and the wrong is capable

7

of being terminated, a right of action exists for the damages suffered within the statutory period immediately preceding suit.

*Davis v. Laclede Gas Co.*, 603 S.W.2d 554, 556 (Mo. banc 1980). This doctrine is known as "the continuing-wrong exception to traditional accrual…" *Smock v. Associated Elec. Coop., Inc.*, 567 S.W.3d 211, 218 (Mo. App. W.D. 2018). Under the exception, "'each continuation or repetition of wrongful conduct may be regarded as a separate cause of action for which suit must be brought within the period beginning with the occurrence.'" *Id*. (quoting *Lake St. Louis Cmty. Ass'n v. Oak Bluff Pres.*, 956 S.W.2d 305, 310 (Mo. App. E.D. 1997)).

A "claim for slander of title falls within" the continuing wrong exception. *Nolan v. Kolar*, 629 S.W.2d 661, 663 (Mo. App. E.D. 1982). In *Nolan*, the plaintiff and her husband borrowed money from the defendant bank by executing two notes and deeds of trust secured by two parcels of land. *Id*. at 662. The plaintiff and her husband fully paid back the loans in 1965. *Id*. They "asked the bank to acknowledge satisfaction of the notes and deeds of trust, but the bank refused." *Id*. The bank then gave the notes and deeds of trust to the plaintiff's husband "without marking the notes paid." *Id*. In 1973, the plaintiff realized that the notes had not been cancelled and sued to quiet title. *Id*. In 1975, the notes were finally cancelled. *Id*. at 663. In 1980, the plaintiff sued for slander of title; the defendant bank moved to dismiss on the ground that the action was barred by the five-year statute of limitations, and the motion was granted. *Id*. at 662-63. On appeal, the Eastern District of this Court found that the plaintiff had pled "a continuous tortious cloud on her title from 1965 to 1975." *Id*. at 663. Thus, the plaintiff was entitled to seek damages for the statutory period (five years) immediately preceding the commencement of her lawsuit. *Id*.

In the case at bar, Brenda presented evidence that made it clear that the Deed of Trust was void *ab initio*, as she did not sign it (or the Note it secured); that Nationstar had no valid lien

8

interest in her property; and that Nationstar slandered her title by maintaining an invalid lien against her property with the Jackson County Recorder of Deeds. Under *Nolan*, Nationstar's refusal to release the lien was a continuing wrong that created "a fresh injury from day to day" until the lien was released. Consequently, Brenda's action for slander of title was not time-barred and "a right of action exist[ed] for the damages suffered within the statutory period [five years] immediately preceding" the commencement of her lawsuit. *Davis*, 603 S.W.2d at 556.[5]

Point II is denied.

For its third point on appeal, Nationstar argues that the circuit court's judgment awarding Brenda damages for slander of title was not supported by substantial evidence. "On review of a court-tried case, an appellate court will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Ivie v. Smith*, 439 S.W.3d 189, 198–99 (Mo. banc 2014).

---

[5] This Court has recently provided the following additional guidance on the issue of accrual in the context of a slander of title action:

> "Missouri uses a reasonable person standard: a wrong is capable of ascertainment when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages."… "The record of an instrument is notice only to those who are bound to search for it [,] ... not a publication to the world at large." Therefore, contrary to the [defendant's] argument, a party cannot rely on real estate recordings as providing constructive notice of a claim so as to set the statute of limitations in motion. Therefore, the question is when a reasonable person in the position of the [] Plaintiffs would have become aware of the alleged slander to the title.

*Eckel*, 540 S.W.3d at 486 (internal citations omitted) (some quotation marks omitted).

In this case, Brenda testified that she became aware of a potential problem with the mortgage sometime after her husband's death in May of 2013. Specifically, she began consulting with professionals regarding the status of the loan after she noticed that she was receiving loan invoices addressed *only* to Emmanuel's estate. Additionally, following her husband's death, Bank of America (Nationstar's predecessor) employees told Brenda that they could not discuss the mortgage with her because her "name was not on the loan." Even if there were no continuing wrong (had the lien been released in the interim) we find, considering the facts in the light most favorable to the judgment, that the trial court had reason to conclude that the slander to Brenda's title did not become capable of ascertainment (and did not therefore accrue) until sometime after her husband's death on May 17, 2013. She filed her suit on May 5, 2016 -- well within the five-year period of limitations (were there no continuing wrong).

9

"Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the circuit court's judgment." *Id*. at 199. "To prevail on [a] substantial-evidence challenge, [the appellant] must demonstrate that there is no evidence in the record tending to prove a fact that is necessary to sustain the circuit court's judgment as a matter of law." *Id*. at 200. We view the evidence in the light most favorable to the circuit court's judgment, deferring to its credibility determinations, and accepting as true all facts and inferences favorable to its decree. *Id*.

"'[A] claim of slander of title requires the plaintiff to demonstrate: 1) some interest in the property, 2) that the words published were false, 3) that the words were maliciously published, and 4) that he suffered pecuniary loss or injury as a result of the false statement.'" *Eckel v. Eckel*, 540 S.W.3d 476, 485 (Mo. App. W.D. 2018) (quoting *Bechtle v. Adbar Co., L.C.*, 14 S.W.3d 725, 728 (Mo. App. E.D. 2000)). Nationstar contends that it did not maliciously publish false words regarding Brenda's property.

In support, Nationstar argues that "[t]he only 'publishing' by recording of the deed of trust occurred on January 19, 2006, and was done by Countrywide, not Nationstar." Brenda responds that when Nationstar took over servicing rights on the loan, only Nationstar had the power to cancel the Deed of Trust and that it declared a false interest in her property when it refused to do so.[6] Thus, the question before this Court is whether Nationstar's refusal to release the invalid Deed of Trust constituted a publication. The parties have not directed the Court's

---

[6] In its judgment, the circuit court also took the position that Nationstar published an invalid interest in Brenda's property by refusing to remove the previously recorded Deed of Trust: "Defendant wrongfully declared an interest in the property by **refusing to remove its claim** to the title to the home and publishing those statements to the public through the Jackson County, Missouri Recorder of Deeds in the form of the Deed of Trust." (Emphasis added).

10

attention to any Missouri cases addressing this specific issue, and our research has yielded none. The question appears to be one of first impression.

Missouri law recognizes that it is not solely the original publisher who may be held liable for the publication of defamatory matter:

> The actual publisher…is not alone legally responsible for the defamatory publication ***but all who in anywise aid or are concerned in the production of the writing are liable as publishers***; the publication of the writing is the act of all concerned in the production of the writing…Liability attaches to one who requests, aids or procures another to publish the defamatory matter, the procurer is guilty of a publication whenever it takes place.

*Laun v. Union Elec. Co. of Mo.*, 350 Mo. 572, 580, 166 S.W.2d 1065, 1070 (Mo. 1942) (internal citation and quotation marks omitted) (emphasis added); *see also Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103 (9th Cir. 2009) ("Defamation law sometimes imposes 'an affirmative duty to remove a publication made by another.'") (quoting Prosser and Keaton on Torts § 113, at 803).

To accept Nationstar's argument would be tantamount to a determination that the injury to Brenda through publication of the invalid Deed of Trust was complete as a legal injury on the date of publication. This is contrary to the continuing wrong doctrine, which recognizes that an invalid lien is a continuing wrong that produces a fresh injury each day it remains published with the recorder of deeds. *Nolan*, 629 S.W.2d at 663. Furthermore, the Eastern District of this Court has indirectly acknowledged that refusal to release an invalid deed of trust supports an action for slander of title. *Tongay v. Franklin Cty. Mercantile Bank*, 735 S.W.2d 766, 771 (Mo. App. E.D. 1987) (reversing grant of summary judgment on claim for slander of title where "one could reasonably conclude a difference of opinion exists on the issue of whether respondents acted with malice in recording ***and maintaining*** the deed of trust against appellants' property.") (emphasis added).

11

In the instant case, Nationstar was placed on express notice by way of correspondence from Brenda's attorneys as early as January of 2015 that it was wrongfully claiming an interest in Brenda's property. Apparently recognizing that its security interest was invalid, Nationstar then had CSM contact Brenda directly to persuade her to execute a ratification agreement in an effort to reform the ineffective Deed of Trust. Brenda's counsel then responded to CSM's letter by explaining (with citations to pertinent authority) that the Deed of Trust was invalid in that Brenda had never signed it. Nationstar was thus fully apprised it held no valid security interest in Brenda's property. Brenda demanded that it release the Deed of Trust. Nationstar had no legitimate excuse or justification for refusing to do so. Its refusal to release the Deed of Trust constituted a publication.[7]

Nationstar further argues that Brenda failed to adduce evidence that it published an interest in her property with malicious intent. It is true that "an action for slander of title cannot exist without a malicious intent." *Tongay*, 735 S.W.2d at 770. However, the plaintiff need not present direct evidence of the defendant's mental state, as malice may be inferred from its conduct:

> To infer the existence of malice, the evidence of plaintiffs must support a reasonable inference that the representation not only was without legal justification or excuse, but was not innocently or ignorantly made. Such inference may rest on a foundation of circumstantial evidence and proof of a lack of probable cause would support an inference that the representation was not innocently made out of stupidity or ignorance but was known to be false.

*Id*. (internal citation omitted).

---

[7] Other jurisdictions are in accord. *Shenefield v. Axtell*, 274 Or. 279, 282, 545 P.2d 876, 878 (1976) (noting that the plaintiff adequately pled a malicious and false publication where the defendant "maintained" and "wrongfully refuses to remove" a claim to the plaintiff's land in the county land records); *Anton, Sowerby & Assocs., Inc. v. Mr. C'S Lake Orion, L.L.C.*, 309 Mich. App. 535, 550, 872 N.W.2d 699, 707 (2015) (lower court properly granted summary disposition in favor of party suing for slander of title where opposing party "could have, and should have, discharged [a] lien" it had placed on certain real property). *But see Barquin v. Hall Oil Co.*, 28 Wyo. 164, 201 P. 352, 353-54 (1921) (failure to discharge a lien not cognizable as a claim for slander of title).

Where a difference of opinion exists on the issue of malice, the question is one for the trier of fact to resolve. *Id*. at 771. As we have explained more fully above, Brenda's counsel advised Nationstar that she had not signed the Deed of Trust. Thus, as a sophisticated mortgage company, Nationstar undoubtedly understood that the Deed of Trust did not effectively encumber Brenda's property (particularly as it had been provided pertinent authorities on the issue). *Ethridge v. TierOne Bank*, 226 S.W.3d 127, 132 (Mo. banc 2007) ("A deed by only one of two tenants by the entirety conveys nothing."); *see also Fed. Nat. Mortg. Ass'n v. Pace*, 415 S.W.3d 697, 703 (Mo. App. E.D. 2013) ("[N]either spouse has any right, title, or interest that he or she may convey, encumber, or devise by his or her sole act."). Nevertheless, it declined to remove the lien. There was substantial evidence from which the circuit court could conclude that Nationstar's declared interest in Brenda's property "was without legal justification or excuse, [and] was not innocently or ignorantly made." *Tongay*, 735 S.W.2d at 770.

Nationstar contends that Brenda failed to present substantial evidence that she sustained a pecuniary loss or injury as a result of the slander to her title. The circuit court awarded Brenda $25,000.00 in general damages on her claim for slander of title and $5,000.00 in attorneys' fees. At trial, Brenda testified that she had accrued approximately $30,000.00 in legal fees in her efforts to clear title to her property; and her attorneys submitted invoices indicating fees totaling $33,608.99. "[A]ttorney's fees expended in clearing a disparaged title are recoverable as special damages in a slander of title action." *Lau v. Pugh*, 299 S.W.3d 740, 750 (Mo. App. S.D. 2009); *see also First Nat. Bank of St. Louis v. Ricon, Inc.*, 311 S.W.3d 857, 867 (Mo. App. E.D. 2010) (stating that the plaintiff's "attorney's fees [incurred] to remove the cloud on his titles…constitute[d] a sufficient basis to establish pecuniary loss or injury."). Brenda's testimony that she had been prevented from marketing her home due to Nationstar's lien also

13

supported an award of damages. *See Greenlake Inv. Co. v. Swarthout*, 161 S.W.2d 697, 699 (Mo. App. 1942) (plaintiff sustains damages in slander of title "[s]o long as [false] instrument remains on the public record against the property uncancelled…complicating, interfering with and rendering uncertain the outcome of any efforts plaintiff might make to transfer the property."). When considering the evidence in a light most favorable to the judgment, the total amount awarded in the judgment ($30,000.00) is supported by substantial evidence.[8]

Brenda presented substantial evidence with regard to each of the elements of her claim for slander of title. Point III is denied.

Finally, Brenda has filed a motion for an award of her appellate attorneys' fees in the sum of $21,675.00. "[T]he entitlement to attorneys' fees on appeal stands upon the same ground as that at the trial court level." *Vogt v. Emmons*, 181 S.W.3d 87, 97 (Mo. App. E.D. 2005). As we have explained above, "attorney's fees expended in clearing a disparaged title are recoverable as special damages in a slander of title action." *Lau*, 299 S.W.3d at 750. However, "although appellate courts have the authority to allow and fix the amount of attorney's fees on appeal, we exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested."

---

[8] In its judgment, the circuit court stated that Brenda "did not plead or prove specific damages." This finding was incorrect in that Brenda *did* plead her attorneys' fees as special damages under her count for slander of title; cited *Lau*, *supra*, in her petition, which authorizes an award of attorneys' fees as special damages in an action for slander of title; and submitted her attorneys' invoices at trial as evidence of her claim for special damages. The circuit court's judgment then went on to award Brenda $5,000.00 in attorneys' fees. The judgment is therefore inaccurate and self-contradicting on the issue of Brenda's special damages.

"The trial court's judgment as to the [calculation of damages] will be affirmed under any reasonable theory supported by the evidence, ***even if the reasons advanced by the trial court are wrong or insufficient***." *Trimble v. Pracna*, 167 S.W.3d 706, 716 (Mo. banc 2005) (emphasis added); *see also Denney v. Milgram Food Stores, Inc.*, 614 S.W.2d 323, 325 (Mo. App. W.D. 1981) ("If the damages were returned on any rational assessment of the evidence…the judgment will be sustained on appeal."). Although the reasons advanced by the circuit court in support of its damages award were incorrect, for the reasons explained more fully above, the award is supported by a rational basis in the evidence and we therefore decline to disturb it. *Rauscher v. Gen. Motors Corp.*, 905 S.W.2d 158, 163 (Mo. App. E.D. 1995) ("Pursuant to Rule 84.13(b) reversal is appropriate only for prejudicial error[.]").

14

*Rosehill Gardens, Inc. v. Luttrell*, 67 S.W.3d 641, 648 (Mo. App. W.D. 2002). We therefore remand to the circuit court solely for it to conduct a hearing to determine the amount of Brenda's reasonable attorneys' fees on appeal and to enter judgment accordingly. *Id*.

### *Conclusion*

The judgment of the circuit court is affirmed. Brenda's Motion for Award of Attorney Fees on Appeal is sustained, and the case is remanded for further proceedings consistent with this opinion.

/s/ *Thomas N. Chapman*

Thomas N. Chapman, Presiding Judge

All concur.