William HOUSKA and Dorothy Houska, Plaintiffs-Appellants,

v.

John H. FREDERICK and Mabel Frederick; William S. Sinak and Helena T. Sinak, Defendants-Respondents.

No. 54167.

Supreme Court of Missouri, Division No. 1.

Dec. 8, 1969.

Ziercher, Tzinberg, Human & Michenfelder, Erwin Tzinberg, Clayton, Kenneth W. Grattendick, St. Louis, for plaintiffs-appellants.

Albert E. Schoenbeck, St. Louis, for defendants-respondents, John H. Frederick and Mabel Frederick.

Joseph J. Becker, Clayton, for defendants-respondents Sinak.

LAURANCE M. HYDE, Special Commissioner.

Action to reform deeds to change the described boundary line between plaintiffs' land and land of defendants Sinak, alleged to have been incorrectly described due to mutual mistake of plaintiffs and defendants Frederick who originally owned all of the land. The court found against plaintiffs' claim, as to the boundary line between their land and the land of the Sinaks, but found a correction should be made in the description of the western boundary described in the deed to them from the Fredericks. All parties agree to this change in the western boundary line and it is not involved in this appeal. The court also entered judgment for $3,500.00 for the Sinaks on their counterclaim against plaintiffs for damages caused by filing lis pendens. We have jurisdiction because title to real estate is involved. Art. V, § 3, Const., V.A.M.S. Plaintiffs have appealed from the judgment against them.

■ Plaintiffs bought land from the Fredericks in 1956. The land owned by Fredericks was in a tract designated as Lot 6 of Boli tract. The sale contract dated September 5th was signed by Mrs. Houska using her maiden name Warren so their identity would not be disclosed. This contract described the land in general terms as fronting approximately 400 feet on Mentz Hill Road stating "accurate survey to govern this contract" ; and further stated: "cost of survey to be divided between purchaser and seller." A survey was made by L. M. Shaw for them, dated September 14, 1956, after the parties had agreed to a longer frontage on Mentz Hill Road to include the junction of the driveway to the buildings on the land with Mentz Hill Road. The Shaw survey showed the south boundary line of the land as running from this agreed southwest corner diagonally to a "chiseled cross on ledge" and then continuing this same straight line northeast to the east boundary of the tract. This made the eastern side of the tract only 279.25 feet wide. Plaintiffs wanted more land there and a supplemental agreement, dated November 1, 1956, was made in the form of a letter to the realtors handling the transaction, signed as Dorothy A. Warren by Mrs. Houska, stating among other matters: "It is further agreed that survey made by L. M. Shaw dated September 14th, 1956 is acceptable with the exception that the South line running East from the chiseled cross on the ledge is to be parallel to the North line of said property and that the East line of said tract shall be 400 feet instead of 279.25 feet." A second Shaw survey plat was drawn to show this longer eastern boundary, and the total acreage was shown to be 13.5 acres. The warranty deed from the Fredericks to plaintiffs used the Shaw survey description as to courses

and distances as did trust deeds made by plaintiffs in 1957 and 1958 for financing a house they built on the land. The description in these trust deeds concluded with the statement "according to a survey made by L. M. Shaw on September 14, 1956." However, none of them mentioned "the chiseled cross on ledge," but in each case the courses and distances of the Shaw survey were used to go "to a point" and then to the next point.

The controversy in this case is due to the fact that the designated monument on the south line "the chiseled cross on ledge" is only 384.34 feet from the north line so it is not possible for the south line of the tract to be parallel to the north line thereof from "the chiseled cross on ledge" to the southeast corner of the tract which is 400 feet south of the northeast corner. A parallel line going west from the southeast corner of the tract, marked by an iron pin, would miss the "cross on ledge" by 15.64 feet. This disputed area is in or along the bed of a creek.

No controversy arose until the Fredericks conveyed to the Sinaks the land (22.45 acres) south of plaintiffs' land November 16, 1962. This deed described the north line (the south line of plaintiffs' tract) of the land conveyed as going east by courses and distances "to a cross on the rock ledge as marked by L. M. Shaw Surveyor; thence continuing along the Southwestern line of the property of Houska, South 45 degrees 57 minutes east 605.04 feet." This distance was shown on the Shaw survey plat as 605' ±. The Sinaks held title for Mrs. Sinak's mother, Mrs. Anne Chura, who was a real estate broker. After the conveyance to them, Mrs. Chura took over the operation and development of the property, had it subdivided by a surveyor and had a plat of the subdivision, called Mentz Hill Acres, recorded on June 22, 1964, before this action was commenced. Mrs. Chura later sold three lots along the disputed boundary line after plaintiffs filed lis pendens, conveying by quitclaim deeds,

and claimed damages of $7,500.00 for having to sell them at less than actual value.

Plaintiffs claim an agreement with Frederick, when their frontage on Mentz Hill Road was increased, that they were to get the entire bed of the creek which ran south of the ledge where the cross was chiseled. This would have included two springs and Houska said he told Frederick he wanted them for water for horses he would raise and would want to build a fence on the south side of the creek. Frederick testified the line of the Shaw survey would be along the middle of the creek and would give plaintiffs one spring on the north side and that he intended to keep the one on the other side. Plaintiffs did not build a fence along the creek until after the conveyance of the adjoining land to the Sinaks six years later. Houska said he had never seen the cross on the ledge until Mrs. Chura pointed it out after the conveyance to Sinaks in 1962. However, Mrs. Houska, in whose maiden name the sale contract was made and who signed the November 1, 1956 modification agreement, testified as follows:

"You knew where that chiseled cross on the ledge was on your survey, did you not, when you signed it?

"A We knew there was a marker here.

"Q You knew there was a chiseled cross on the survey when you signed the modification?

"A Well, yes."

After the controversy with the Sinaks arose plaintiffs and Mrs. Chura each had new surveys made. The Lyman survey was made for plaintiffs on the basis of a south line parallel to the north line to the point 15.64 feet south of the chiseled cross and this would have given plaintiffs an additional triangular strip in each direction from that point. Another survey by the Elbring Surveying Company was made for Mrs. Chura and was used for preparing the deed from Frederick to the Sinaks.

The court made findings of fact on the disputed issues between plaintiffs and Frederick, as follows:

"5. That the surveyor L. M. Shaw, in surveying the line which was to divide the property of plaintiffs, William Houska and Dorothy A. Houska, his wife, from the property retained by the defendants, John M. Frederick and Mabel M. Frederick, his wife, erected monuments and markers in the field commencing at an iron pin in the Eastern line of Mentz Hill Road then following the natural contour of a ditch existing on said property and erected a chiseled cross on the rock ledge as shown in the survey prepared by him and dated September 13 and 14, 1956. An iron pin was placed in the Southeast line of Lot 6 of the Boli Tract, four hundred feet distant from an old stone at the Eastern corner of Lot 6 of the Boli Tract. The cost of the survey executed by L. M. Shaw was borne equally by plaintiffs William Houska and Dorothy A. Houska, his wife, and defendants John M. Frederick and Mabel M. Frederick, his wife.

"6. From the testimony of the witnesses the Court finds that it was the intention of the plaintiffs, William Houska and Dorothy A. Houska, his wife, and the defendants John M. Frederick and Mabel M. Frederick, his wife, that the boundary line to be established between the parcel sold to plaintiffs and the parcel retained by defendants, Frederick, was to be divided by the line as represented on the Shaw survey executed on September 13 and 14, 1956, and the modifications thereto, and that said line was to follow the markers and monuments erected by Shaw as shown on his survey.

"7. That the legal description contained in the Warranty Deed from the Fredericks to the Houskas was defective and does not accurately describe the property purchased by plaintiffs, Houska, from defendants, Fredericks, for the reason that said final and amended survey, from which the legal description contained in the Deed of Con-veyance was taken, does not 'close,' that is, the bearings shown in figures thereon do not accurately indicate the proper direction of the lines.

"8. From the evidence and based on the credibility of the testimony of the witnesses, the Court finds that defendants Fredericks intended to sell and plaintiffs Houska to buy that tract of land bounded by the monuments erected in the field by the surveyor L. M. Shaw and as represented by the lines on the drawing prepared by him according to his survey of September 13 and 14, 1956, and the modifications thereto."

The court also made findings of fact on the disputed issues between plaintiffs and Sinaks, as follows:

"10. That the defendants, John M. Frederick and Mabel M. Frederick, his wife, delivered a copy of the Shaw survey of September 13 and 14, 1956 as modified, to the defendants William S. Sinak and Helena T. Sinak, his wife, at the time of the execution of the sales contract between the Sinaks and the Fredericks.

"11. That the survey executed by L. M. Shaw on September 13 and 14, 1956 as modified, and the monuments erected by him in the field were used by Elbring Surveying Company in preparing the survey executed during the month of August, 1962, which was used in preparing the legal description contained in the Deed from the Fredericks to the Sinaks and which said survey of the Elbring Surveying Company of 1962 is hereby found to be correct.

"12. At the time of their purchase of the parcel of property retained by the Fredericks, neither the Sinaks or their agent had any knowledge, actual or constructive, of any defect or controversy concerning the location of the boundaries or description of the parcel of land purchased by the Houskas or the parcel retained by the Fredericks.

"13. That the defendant, William S. Sinak and Helena T. Sinak, his wife, were in good faith, innocent purchasers for value of the property deeded to them by Mr. and Mrs. Frederick.

"14. That on May 12, 1964, the defendants, William S. Sinak and Helena T. Sinak, gave notice to plaintiffs William Houska and Dorothy A. Houska of their intention to subdivide their portion of the Frederick property using the dividing boundary established by the Shaw and Elbring survey."

It is most helpful to have the trial court's determination of the material facts in this complete form. Our review is under Civil Rule 73.01(d), V.A.M.R., providing: "The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." We find the facts found by the trial court to be supported by substantial evidence and consider them correct and controlling.

"[W]hen a description is by courses and distances with designation of natural or artificial monuments marking points or lines in the boundaries described, the lines will run to or along these monuments as the case may be, even if departure must be made from the courses or the distances or both in order to do so." 3 American Law Property 444, § 12.117. "[I]t is one of the settled rules of the law of boundaries that calls for courses and distances, quantity, etc., will, in case of a conflict, be controlled by, and will yield to, one for a natural object or landmark or permanent artificial monument." 12 Am.Jur.2d 604, § 67. See also 11 C.J.S. Boundaries § 50, p. 603; The Missouri Law of Title to Real Property, Vol. I, Gill, p. 134, par. 145; Johnson v. Buffalo School Dist. No. 1 of Dallas County, 360 Mo. 962, 231 S.W.2d 693, 696 and cases cited. It is shown that the "chiseled cross on ledge" and the iron pin in the southeast corner of the tract are definite visible monuments. We,

therefore, hold that line between these two monuments controls over the designation of a line parallel to the north line and 400 feet from it; and that the south boundary line of plaintiffs' land, being the boundary line between plaintiffs' land and the Sinaks' land, is the line between these two monuments.

██ The Sinaks rely on slander of title as the basis of their counterclaim claiming damages resulting from selling three lots, abutting the boundary line, at reduced prices because of the lis pendens filed by plaintiffs. They cite 33 Am.Jur. 314, Libel and Slander § 348 and A.L.I. Restatement of Torts §§ 625, 628. The rules stated in these sections do not apply to litigation over property. Restatement of Torts § 638 states: "A party to a private litigation * * * has an absolute privilege to disparage another's property in * * * his land * * * in the institution of or during the course and as a part of a judicial proceeding in which he participates if the disparagement has some relation thereto." See also § 587; Maginn v. Schmick, 127 Mo.App. 411, 105 S.W. 666, 668; Jones v. Brownlee, 161 Mo. 258, 61 S.W. 795, 53 L.R.A. 445; McCormick v. Ford Mfg. Co., Mo.Sup., 232 S.W. 1010, 1011; 33 Am.Jur. 142, Libel and Slander, § 146; 53 C.J.S. Libel and Slander § 277, p. 396. However, there could be an action for wrongful initiation of civil proceedings, Restatement of Torts §§ 674, 675, 676, but this must be based on lack of probable cause, suing for a purpose other than securing adjudication of plaintiffs' claim and without reasonable belief of a valid claim. Our statute, § 527.-260 RSMo 1959 V.A.M.S., provides for filing of lis pendens and it is proper to do so when a party has reasonable grounds to believe he has a valid claim. We agree with the Supreme Court of California, which in Albertson v. Raboff, 46 Cal.2d 375, 295 P.2d 405, 409, held that absolute privilege "attaches to the recordation of a notice of lis pendens" (overruling West Investment Co. v. Moorhead, 120 Cal.App.

2d 837, 262 P.2d 322, 39 A.L.R.2d 833). The court said: "It would be anomalous to hold that a litigant is privileged to make a publication necessary to bring an action but that he can be sued for defamation if he lets any one know that he has brought it * * * particularly when he is expressly authorized by statute to let all the world know that he has brought it." (We note the California statute says "the plaintiff * * * *may* record * * * * a notice of the pendency of the action," 295 P.2d 1. c. 408, while our § 527.260, says: "In any civil action * * * designed to affect real estate, the plaintiff *shall* file for record * * * a written notice of the pendency of the suit." (Emphasis ours.) We hold that when such a notice has a reasonable relation to the action filed, as we hold it does here, absolute privilege attaches to its recordation.

The allegations of the Sinaks' counterclaim would probably be sufficient to indicate a claim of malicious prosecution of a civil action, stating plaintiffs "knew they had no right, title or interest to the land claimed," and that "they knew the allegations of the petition were false." However, the proof did not make that kind of a case and the court made no such finding. The evidence indicates a claim made in good faith by plaintiffs. It is conceded that part of the Shaw survey was incorrect (at least the part along Mentz Hill Road) and the modification agreement concerning the south line stated an impossibility as to its location so it was reasonable to make it the subject of judicial construction. Moreover, the description in plaintiffs' warranty deed was defective and likewise was properly subject to judicial interpretation. Our ruling of privilege for filing the lis pendens makes moot the claim that the Sinaks were not proper parties to recover damages on behalf of Mrs. Chura, the real owner.

Therefore, the judgment is affirmed as to the location of the south boundary line and the vesting of the title of the land south of it in the Sinaks, but is reversed as to the award of damages, and is remanded for determination and correction of plaintiffs' west boundary line.

PER CURIAM:

The foregoing opinion by LAURANCE M. HYDE, Special Commissioner, is adopted as the opinion of the court.

SEILER, P J., and HOLMAN, J., concur.

STORCKMAN, J., absent.