**FIRST NATIONAL BANK OF ST. LOUIS, Appellant,**

v.

**RICON, INC., Richard A. Davis, and Connie Davis, Respondents.**

No. ED 92562.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 30, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 4, 2010.

Application for Transfer Denied June 29, 2010.

Elizabeth C. Carver, St. Louis, MO, for appellant.

Paul N. Rechenberg, Chesterfield, MO, for respondents.

GARY M. GAERTNER, JR., Judge.

### Introduction

First National Bank of St. Louis (First National) appeals from trial court's entry of judgment in favor of Richard A. Davis (Davis) on Davis's counterclaim for slander of title; from the trial court's denial of First National's Renewed Motion of Plaintiff/Counterclaim Defendant First National Bank of St. Louis for Judgment Notwithstanding the Verdict on the Counterclaim, or in the Alternative, for a New Trial, or in the Alternative, for Remittitur (Post-trial Motion); and from the trial court's award of attorney's fees to Davis.[1] We reverse the trial court's entry of judgment as to Davis's slander-of-title counterclaim because we conclude that the trial court erred in granting partial summary judgment to Davis as to liability only on his slander-of-title counterclaim, and we re-

mand for further proceedings consistent with this opinion.

### Factual and Procedural Background

On August 29, 2006, First National initiated an action against Davis, Ricon, Inc. (Ricon), and Connie Davis (Davis, Ricon, and Connie Davis collectively referred to as Defendants). First National's Amended Petition, filed September 18, 2006, contained three counts: 1) breach of contract; 2) replevin; and 3) unjust enrichment.

As pertinent, First National alleged in its breach-of-contract count that on January 24, 2000, Ricon executed, and First National accepted, a promissory note (First Promissory Note) whereby Ricon promised to pay First National the principal sum of $315,000. This First Promissory Note was secured by a Security Agreement, dated August 24, 1995, as amended on December 15, 1999 (Security Agreement) and a personal guaranty (Personal Guaranty), dated December 15, 1999, signed by Davis and Connie Davis. The Personal Guaranty guaranteed prompt payment of any and all indebtedness or other obligations, gave to First National "a general lien and right of setoff upon and to every deposit account with [First National]," and pledged to First National "all moneys, notes, bonds, stocks or other securities, of every kind, as well as any other property, now or hereafter delivered to or in the possession of [First National][.]" First National also alleged that on September 15, 2005, Ricon executed, and First National accepted, a promissory note for a revolving line of credit with a principal amount of $500,000, secured by a Commercial Security Agreement dated December 15, 2000, a Life Insurance Assignment dated August 15, 2001, and Commercial Guaranties dated August 16, 2005.

---

1. Defendants Ricon, Inc. and Connie Davis are not parties to this appeal.

First National asserted that Defendants breached the terms of the loan documents for these two loans by moving their deposit accounts from First National. First National further asserted that "[u]pon information and belief, Defendants have used proceeds from the sale of First National's collateral to purchase and/or finance other assets. First National believes that said assets include real property held by Richard A. Davis and Connie F. Davis." In its prayer for relief for this count, First National asked "for a judgment against Defendants 'in the amount of $343,878.73, plus interest at the highest contract rate allowed by law, for its attorney fees, legal costs and repossession costs, for the costs of court, and for such further relief as the Court deems just and proper.'"

In its replevin count, First National realleged and incorporated the allegations contained in its breach-of-contract count, and asserted that the Defendants had obtained and remained the current holders of legal title of the collateral pledged as security for the two loans. In its prayer for this count, First National asked for immediate possession of the collateral or an order allowing the collateral to be secured, the value of the collateral if not delivered, damages for retention of the collateral, and such other and further relief as deemed just and proper.

In its unjust-enrichment count, First National realleged and incorporated the allegations contained in its. first two counts, and asserted that Defendants had been unjustly enriched at First National's expense. First National requested a judgment in the principal amount of $343,878.73 plus accrued interest, attorney's fees, costs, and such other and further relief as deemed just and proper.

On September 18, 2006, First National recorded two separate Notices of Lis Pendens (Notices) with the St. Louis County Recorder of Deeds, one containing the legal description of a personal residence titled in Davis's name and the other containing the legal description of a personal residence titled jointly in Davis's and Connie Davis's names.

Thereafter, Davis filed his First Amended Counterclaim (Counterclaim) against First National, containing three counts: 1) negligence; 2) slander of title; and 3) abuse of process. In his Counterclaim, Davis alleged, among other things, that First National filed Notices on personal residences belonging to him and Connie Davis, that neither of these personal residences had been pledged to First National as collateral for any loans, and that First National's cause of action had nothing to do with the personal residences and did not affect or impact the title to the residences. Davis further alleged that in August 2007, he applied to refinance mortgages on both personal residences, and he claimed the refinancing would save him thousands of dollars over the term of the new loans. Davis also alleged that he received a conditional commitment to refinance the loans on the residences, but that his application was rejected by the lender when it discovered the two Notices recorded by First National. He alleged that First National refused his demand to release the Notices and that he was consequently unable to refinance his mortgages.

Davis moved for summary judgment (Motion for Summary Judgment), submitting his Statement of Uncontroverted Material Facts in Support of Motion for Judgment (Statement of Uncontroverted Material Facts) with exhibits and a Memorandum of Law in Support of Motion for Summary Judgment. In his Motion for Summary Judgment, Davis argued that First National's filing of the two Notices on the personal residences constituted actionable slander of title because First Na-

tional's action was an attempt to collect money damages for an alleged breach of the two promissory notes, and the two personal residences were never pledged as security to First National as collateral for any First National loan. Davis argued that he suffered pecuniary loss as a direct result of First National's improper filing of these Notices because another lender refused his application to refinance the mortgage loans on the personal residences due to the pending Notices.

First National filed its responses to Davis's Motion for Summary Judgment (Response). In its Response, First National admitted the following facts, as pertinent to the issues on appeal. Davis and Connie Davis own the house and real property located at 2232 Edge Wood Manor Lane in Ballwin, Missouri, a property that is Connie Davis's personal residence (the Ballwin residence). Davis and Connie Davis purchased the Ballwin residence in 1996. Davis purchased his personal residence (the Chesterfield residence) on or about August 31, 2005. When Davis purchased the Chesterfield residence, he borrowed 100% of the purchase price from a secured lender that was different from First National. The first loan issued by First National to Ricon that is the subject of the underlying litigation was made on or about January 24, 2000. The second loan issued by First National to Ricon that is the subject of the underlying litigation was made on or about September 15, 2005. Neither the Chesterfield residence nor the Ballwin residence was ever pledged as collateral to First National for either of these two loans. First National filed and/or recorded a Notice of Lis Pendens with respect to both residences on or about September 18, 2006. Davis initiated an attempt to refinance the mortgage loans on both residences in August of 2007.

In his Statement of Uncontroverted Material Facts, Davis alleged in Paragraph 15 that one of the reasons First National filed the Notices was "to preserve an asset to be available in the event [First National] wins this litigation." In support of this fact, Davis submitted a letter, dated August 24, 2007, his counsel received from First National's counsel, which stated, in relevant part:

We are in receipt of your correspondence dated August 17, 2007, and in response regretfully advise you that the Bank declines your request to release the notice *lis pendens* filed against your clients' property.

As you know, we recorded the notice *lis pendens* with the reasonable belief that the collateral securing the loans in issue were used by the Davises to make payments on, purchase and/or finance other assets such as the real property against which the notices were recorded. This obviously encompasses the Davises' residences to the extent that any of the Bank's collateral were used by them to make payments toward, or on, their real property. To that end, your statement that our notice *lis pendens* was filed to the Davises' real property to preserve the Bank's right to dispose of or have a lien against the same is quite correct, but clearly was not the only reason the notice was filed. Aside from the foregoing, I would respectfully remind you that the Davises are being sued in their individual capacities as well on the basis of the personal guarantees they executed in connection with their loans with the Bank.

In his Memorandum of Law in Support of Motion for Summary Judgment, Davis argued that the Notices:

were maliciously published as the Bank knew the underlying lawsuit had nothing to do with the real estate. Bank specifi-

cally plead[ed] that the collateral pledged by the defendants was personal property, not real property. Also Bank's counsel admitted by letter that the purpose of filing the notice of lis pendens was to ensure there would be an asset available for collection in the event Bank w[as] successful at litigating this case.

In its Response, First National responded to Paragraph 15 by stating that the paragraph alleged a written document and by objecting that Davis mischaracterized the writing's contents. First National further objected that Paragraph 15 contained inadmissible hearsay and was not properly tendered. First National then denied the facts alleged in Paragraph 15, stating that preservation of the asset was only one among several reasons given for the recording of the Notices. In support of this response, First National cited the August 24, 2007 letter, and quoted the language contained in the second paragraph set out above.

Also in its Response, First National alleged the following pertinent facts in its Statement of Undisputed Material Facts on its Cross–Motion for Summary Judgment on the Amended Petition. Defendants maintained at least one company account with U.S. Bank from which payroll transactions were made. Funds were disbursed and withdrawn from the U.S. Bank payroll account to Davis's personal checking accounts at U.S. Bank. Mortgage payments were made from Davis's personal account to two separate financial companies nearly every month after the personal accounts were opened.

The cause was called for hearing on May 19, 2008, on Davis's Motion for Summary Judgment, and on First National's motions for summary judgment and for sanctions. The motions were heard and submitted.

On June 17, 2008, the trial court entered its Order and Interlocutory Judgment Granting Partial Summary Judgment as to Defendant's Richard Davis's Counterclaim (June 17 Judgment). In its June 17 Judgment, the trial court denied First National's motions and entered interlocutory judgment in favor of Davis and against First National on Davis's counterclaim as to liability only, leaving damages to be determined at trial. The trial court specifically found the filing of the Notices by First National bore no reasonable relation to its action for breach of contract, replevin, and unjust enrichment, noting that the Amended Petition alleged Davis breached the terms of the two promissory notes that were not secured by either of the residences and stating that such real estate bore "no relation to the action, other than it is an asset owned by [Davis] which may be subject to attachment should [First National] obtain judgment against [Davis]."

The trial court later entered an order amending the June 17 Judgment to clarify that the interlocutory judgment was entered for Davis and against First National on the slander-of-title count of Davis's counterclaim. The cause thereafter proceeded to a jury trial. At the close of all the evidence, only two claims were submitted to the jury: First National's breach-of-contract claim, and damages on Davis's slander-of-title claim.

Following trial, the jury found in favor of First National on its breach-of-contract claim and assessed damages at $376,856.67. The jury specified that First National not be allowed to recover attorney's fees. The jury returned a verdict on Davis's slander-of-title claim against First National, awarding $252,000 in compensatory damages and finding that First National was liable for punitive damages. In determining that First National was liable for punitive damages, the jury was in-

structed that it could award Davis an additional amount as punitive damages if it believed First National's conduct was outrageous because of First National's evil motive or reckless indifference to the rights of others. After the verdicts were returned, the punitive damages phase of the trial commenced to assess punitive damages against First National on Davis's slander-of-title claim. The jury awarded Davis $500,000 in punitive damages. On January 16, 2009, the trial court entered an Order and Judgment that, inter alia, awarded attorney's fees in the amount of $31,035.97 to Davis.

Thereafter, First National filed its Post-trial Motion. As relevant to the issues on appeal, First National argued that the trial court erred in its grant of summary judgment in favor of Davis as to liability because Davis failed to demonstrate that no genuine issue existed as to whether the Notices made a false statement, whether First National acted with malice, whether Davis suffered a pecuniary loss or injury from the publication of the Notices, and whether the Notices had a reasonable relation to First National's legal action against Davis. First National also argued that the trial court erred in submitting Davis's punitive-damage claim because he did not introduce clear and convincing evidence for the jury to reasonably find that First National's conduct was outrageous due to evil motive or reckless indifference to the rights of others.

On February 17, 2009, First National filed its Motion of Plaintiff/Counterclaim Defendant First National Bank of St. Louis to Alter, Amend, or Modify the Judgment (Motion to Amend), requesting the court to amend the trial court's January 16, 2009 Judgment to, among other things, deny the award of attorney's fees to Davis. On April 16, 2009, the trial court denied First National's Post-trial Motion

and Motion to Amend. This appeal follows.

## Standard of Review

We review a grant of summary judgment de novo. *Bechtle v. Adbar Co., L.C.,* 14 S.W.3d 725, 728 (Mo.App. E.D.2000). We affirm where the moving party establishes the absence of any genuine issue of material fact and its right to judgment as a matter of law. *Id.*

## Points on Appeal

In its first point, First National claims the trial court erred in granting summary judgment to Richard Davis as to liability on his slander-of-title claim and in subsequently entering judgment in his favor because: a) the recording of the Notices was absolutely privileged in that a reasonable relation existed between the notices and the bank's lawsuit; and b) even if no reasonable relation existed as a matter of law, the court applied the wrong legal standard in that it implicitly held the lack of a reasonable relation rendered the bank liable per se for slander of title.

In its second point, First National claims the trial court erred in granting summary judgment to Davis as to liability on his counterclaim and in subsequently entering judgment in his favor because Davis did not establish the absence of a genuine issue of material fact or the right to judgment as a matter of law in that: a) he offered no evidence that the notices contained false words; b) even if his evidence would support a reasonable inference that the notices were published with malice, that issue is one of fact for the jury; and c) the only evidence he presented of pecuniary loss resulting from the publication was inadmissible because it was unauthenticated and/or contained hearsay.

In its third point, First National claims the trial court plainly and clearly erred in

submitting Davis's claim for punitive damages and in entering judgment on the jury's verdict, because he did not show by clear and convincing evidence that First National acted out of an evil motive or with reckless indifference to his rights in connection with the recording of the notices; further, the submission affected First National's substantive rights and resulted in a miscarriage of justice.

In its fourth point, First National claims the trial court erred in awarding Richard Davis attorney's fees incurred in the prosecution of his counterclaim because the "balancing the benefits" exception to the American Rule with respect to attorney's fees did not apply in that: a) Davis's counterclaim was in law, not in equity; b) no "very unusual circumstances" were present in this case; c) Davis's pursuit of his counterclaim benefited only himself; and d) he was more than adequately compensated by the damage awards.

### Discussion

To support an action for slander of title, there must be false words that are maliciously published, causing the plaintiff to suffer a pecuniary loss or injury. *V.J.M. Assoc., Inc. v. Gilmore,* 44 S.W.3d 440, 441 (Mo.App. E.D.2001). Because our determination as to the second premise of Point I requires us to undertake the analysis necessary to determine First National's claim in Point II, we shall address both of these points together.

Section 527.260 RSMo 2000 provides for the filing of lis pendens "[i]n any civil action, based on any equitable right, claim or lien, affecting or designed to affect real estate[.]" Filing a lis pendens "provides a record notice to potential purchasers of a pending suit which may affect title to property and its purpose is to preserve rights pending the outcome of litigation." *Kopp v. Franks,* 792 S.W.2d 413, 424 (Mo.App. S.D.1990).

Where lis pendens notices have a reasonable relation to the action filed, absolute privilege attaches to their recordation. *Houska v. Frederick,* 447 S.W.2d 514, 519 (Mo.1969). Parties have an absolute privilege to disparage another's property interest when participating in a judicial proceeding if the disparagement has some relation to the judicial proceeding. *Id.* at 518. However, the filing of such notices can constitute slander of title where the filings are instituted for a purpose other than securing adjudication of a plaintiff's claim and without reasonable belief in a valid claim. *Id.*

In the breach-of-contract count of its Amended Petition, First National alleged that Davis breached the terms of two promissory notes held by First National by moving deposit accounts from First National. The Amended Petition's only allegation that could be viewed as addressing the personal residences was its averment that "[u]pon information and belief, Defendants have used proceeds from the sale of First National's collateral to purchase and/or finance other assets. First National believes said assets include real property held by Richard A. Davis and Connie F. Davis." The Amended Petition failed to identify this "real property" by any more definite description, legal or otherwise.

As previously stated, the following facts were undisputed. After it initiated this action for breach of contract, replevin, and unjust enrichment, First National filed and/or recorded Notices of Lis Pendens with respect to both residences owned by Davis. Neither of these residences was pledged as collateral to First National for either of the two loans that were the subject of the underlying litigation. The Notices stated that First National had filed "a

suit alleging as a basis in part for the suit, the Defendants' improper use of proceeds from the sale of First National's collateral to purchase and/or finance other assets. First National contends such assets include the [described real property.]"

■■ Significantly, First National initiated its legal action seeking to recover monies due under certain promissory notes executed by Davis and others. All three of First National's counts were based on legal rights granted to it by the terms of the loan documents executed by the parties and all three counts prayed for a money judgment based on Defendants' alleged breach of those terms.[2] The various guaranty documents signed by Defendants enumerated the collateral pledged to First National; significantly, the two residences were not among the collateral pledged as security for either of the loans. Any judgment obtained by First National in the proceeding it filed against Davis would have had no more effect upon the two residences than upon any other real property owned by Davis. Consequently, at the time of the filing, there existed no equitable right, claim or lien affecting or designed to affect the real estate described in the Notices filed by First National, and therefore, the Notices were not authorized by Section 527.260. The Notices had no reasonable relation to the action filed; thus, absolute privilege did not attach to their recordation. *Houska,* 447 S.W.2d at 519.

■■ Moreover, because the use of lis pendens in this case was not authorized by Section 527.260, we determine that the wrongful filing of the invalid Notices is sufficient to meet the "false words" requirement. *V.J.M. Assoc., Inc.,* 44 S.W.3d at 441. First National's Notices falsely informed potential purchasers that its pending suit would affect title to the residences when the bank had no basis for an equitable right, claim or lien. "It is essential that the litigation to which the lis pendens refers shall result in a judgment or decree affecting the property described therein, *and within the issues made.*" *Space Plan. Arch., Inc. v. Frontier Town– Mo.,* 107 S.W.3d 398, 407 (Mo.App. S.D. 2003) (emphasis in original, internal quotations and citation omitted).

Having concluded that First National had no equitable right, claim or lien affecting or designed to affect the two residences, that no reasonable relation existed as a matter of law, and that the wrongful filing met the necessary falsity element, we now address First National's argument that the court applied the wrong legal standard in that it "implicitly held that the lack of a reasonable relation rendered the bank liable per se for slander of title."

Accordingly, we must determine whether Davis established the absence of any genuine issue of material fact as to whether the Notices were maliciously published and whether their filing caused pecuniary loss or injury to Davis. *Tongay v. Franklin County Mercantile Bank,* 735 S.W.2d 766, 770 (Mo.App. E.D.1987). We consider first the issue of whether Davis met his

2. Moreover, replevin is an action to recover specific personal property and does not apply to real property. *See* Section 533.010. Although First National argues that its prayer for "such other and further relief" in its unjust enrichment claim would reasonably include an equitable lien on the residences, we disagree. The doctrine of equitable lien requires an express agreement, or conduct or dealings of the parties from which an intention may be implied, that the property concerned would be appropriated as security for a debt. *See Wilkinson v. Tarwater,* 393 S.W.2d 538, 542 (Mo.1965). The doctrine applies only where there is no remedy provided by law and justice would suffer absent the equitable remedy. *Id.*

burden of persuasion as to the pecuniary loss or injury element.

To prevail on his slander of title action, Davis is required to demonstrate he suffered pecuniary loss or injury due to First National's false statement. *Bechtle*, 14 S.W.3d at 728. In his Motion for Summary Judgment, Davis alleged that he sought to refinance mortgage loans on the two residences, but that his proposed lender refused to refinance the loans due to the pending Notices affecting the properties. Davis further alleged that, as a direct result of First National's filing of the Notices, he suffered "pecuniary loss by not being able to lower his monthly mortgage payments and by incurring attorney's fees to remove the cloud on his title."

In his Statement of Uncontroverted Material Facts, Davis stated, among other things, that he attempted to refinance these loans sometime in August 2007; his proposed lender approved his loan applications pending a title check on the properties; his proposed lender thereafter discovered the Notices and denied his applications; and Davis was unable to refinance the mortgage loans on the properties. In support of his Statement of Uncontroverted Material Facts, Davis submitted his affidavit, stating that he had personal knowledge of these facts and additionally stating that had his refinancing been approved, he "would have been able to save hundreds of dollars each month based on a lower home mortgage interest rate on [the residences' loans] and would have been able to save thousands of dollars over the course of the loans." Davis also submitted a letter received from the loan consultant of his proposed lender, which indicated that the refinance originally approved would have reduced his monthly payment by approximately $700, but that the refinance could not proceed until the Notices were satisfied.

In response to Davis's Statement of Uncontroverted Facts, First National admitted that Davis attempted to refinance the mortgage loans on the residences sometime in August of 2007. First National denied, and objected to as inadmissible hearsay, Davis's statements that his proposed lender approved his loan applications pending a title check on the properties; his proposed lender thereafter discovered the Notices and denied his applications; and Davis was unable to refinance the mortgage loans on the properties. However, First National did not submit evidentiary support for these denials.

 The filing of a lis pendens constitutes a cloud on title. *Don Roth Dev. Co., Inc. v. Mo. Hwy. & Transp. Comm'n*, 668 S.W.2d 177, 179 (Mo.App. E.D.1984). In his Motion for Summary Judgment and Statement of Uncontroverted Material Facts, Davis claimed he suffered pecuniary loss as a result of First National's filing of the Notices concerning his residences by not being able to lower his monthly mortgage payments and by incurring attorney's fees to remove the cloud on his titles. Davis submitted his affidavit to support his claim of pecuniary loss. Facts that are set forth by affidavit in support of a party's motion for summary judgment are taken as true unless contradicted by the non-moving party's response to the motion. *Pipefitters Health & Welfare Trust v. Waldo R. Inc.*, 760 S.W.2d 196, 198 (Mo.App. E.D.1988).

 Although First National denied Davis's statements and objected to them on hearsay grounds, it failed to counter Davis's statements with evidence demonstrating a genuine issue of material fact as to Davis's claim of pecuniary loss. "When a motion for summary judgment is sup-

ported by affidavit, a party resisting the motion cannot rely solely upon his pleadings or argue that evidence presented at trial will disclose material issues of fact. Rather the resisting party must come forward with affidavits, depositions or other evidence demonstrating a genuine issue of material fact." *Id.* Even if we were to conclude that Davis's affidavit contained some statements of fact not based on personal knowledge, the affidavit contained certain uncontradicted statements concerning his pecuniary loss that were based on his personal knowledge, including his incurring attorney's fees to remove the cloud on his titles, which are admissible. These admissible statements constitute a sufficient basis to establish pecuniary loss or injury. *Scott v. Ranch Roy–L, Inc.,* 182 S.W.3d 627, 635–36 (Mo.App. E.D.2005).

Having concluded that Davis established his right to judgment as to the false words and pecuniary loss or injury elements, we now turn our attention to the malicious publication prong of a slander-of-title claim. Proof of falsity, alone, is not proof of malice. *Bechtle,* 14 S.W.3d at 728. To infer the existence of malice, Davis's evidence must support a reasonable inference that First National's Notices were filed not only without legal justification or excuse, but also were not innocently or ignorantly made. *Id.* at 729. "Such inference may rest on a foundation of circumstantial evidence and proof of a lack of probable cause would support an inference that the representation was not innocently made out of stupidity or ignorance but was known to be false." *Id.*

However, whether a defendant's actions were actuated by malice is a jury question "[w]here there is sufficient evidence or where there may be a fair difference of opinion on the issue of malice[.]" *Id.* Consequently, we must determine if, viewing the record most favorably to First

National, Davis established the absence of any genuine issue of material fact as to whether the bank instituted the filings for a purpose other than securing adjudication of its claim and without a reasonable belief in a valid claim. *Bechtle,* 14 S.W.3d at 728–29; *Jones,* 690 S.W.2d at 167; *Houska,* 447 S.W.2d at 519.

Davis's Statement of Uncontroverted Material Facts asserted that "One of the reasons Bank filed the notices of lis pendens was to preserve an asset to be available in the event bank wins this litigation." In Davis's Memorandum of Law in Support of Motion for Summary Judgment, Davis, citing First National's letter, dated August 24, 2007, maintained that "Given the motivation of the Bank in filing the two notices of lis pendens, the Court should find the malice necessary for a cause of action for slander of title."

First National, also citing to their August 24, 2007 letter, responded to this assertion by stating that "the preservation of the asset was only one among several reasons given for the recording of the notice of lis pendens, stating:

> As you know, we recorded the notice lis pendens with the reasonable belief that the collateral securing the loans in issue were used by the Davises to make payments on, purchase and/or finance other assets such as the real property against which the notices were recorded. This obviously encompasses the Davises' residence to the extent that any of the Bank's collateral were used by them to make payments toward, or on, their real property."

Our determination here is guided by *Bechtle,* a case procedurally on point with the instant case. As here, the defendant in *Bechtle* appealed the trial court's entry of summary judgment as to liability only on Bechtle's claim for slander of title.

*Bechtle,* 14 S.W.3d at 726. Bechtle and the defendant had executed a written agreement for the purchase of an office building. *Id.* at 727. The agreement provided that Bechtle could terminate the contract if, among other things, he was unable to acquire what he considered to be a satisfactory replacement property. *Id.* Bechtle exercised his termination right, timely notifying the defendant in writing. *Id.*

Thereafter, one of the defendant's managing partners recorded a notice concerning the real property that stated the defendant had the right to acquire the property. *Id.* When the defendant refused Bechtle's subsequent request to withdraw and release this notice, Bechtle filed a petition alleging that the filing slandered his title. *Id.*

In support of his motion for summary judgment, Bechtle attached a portion of a deposition of the managing partner who filed the notice. *Id.* at 728. In this excerpt, the managing partner stated that the defendant recorded the notice, even though Bechtle had previously notified it that he was terminating the purchase contract, because "if we can't get the property then no one is going to get it for now." *Id.* In response to Bechtle's argument that this statement proved malice, the defendant stated that it had a reasonable belief that it had a right to protect its interest in the property based on its belief that Bechtle had breached the contract's implied covenant of good faith. *Id.* at 728–29. This Court reversed the trial court's grant of summary judgment, concluding that the trial court erred because a jury was entitled to make a determination as to whether the defendant's recorded notice was filed maliciously. *Id.* at 728.

We likewise conclude in this case whether First National acted with malice is a jury question because, albeit a very close question, a fair difference of opinion can exist on the issue of malice before us. *Id.* at 729. Even though the lis pendens notice was false at the time of filing, a jury could find that First National did not act with malicious intent. Viewing the record in a light most favorably to First National, we conclude the contents of the August 24 letter could support a finding that First National believed, until a legal determination could be made, it had a reasonable right to protect its collateral, which Davis had used to make mortgage payments on the residences. *Id.* at 728–29. Although the evidence herein supports with certainty a contrary finding as to this belief, the evidence does not establish that First National acted with malice as a matter of law.[3]

Accordingly, we conclude the trial court erred in entering summary judgment as to liability in favor of Davis on his slander-of-title claim, and thus we remand that claim for further proceedings to determine the issues of liability, actual and punitive damages, and attorney's fees. In light of our disposition of First National's first two points, we need not address First National's other allegations.

## Conclusion

The trial court's entry of judgment in favor of Davis on his slander-of-title counterclaim is reversed. We remand that claim for further proceedings in accor-

---

**3.** Malice in law imputes malice from "the mere intentional doing of a wrongful act to the injury of another without legal justification or excuse." *Proctor v. Stevens Employ-ment Servs., Inc.,* 712 S.W.2d 684, 686 (Mo. banc 1986). MAI 16.01(1) defines malice in law as "intentionally doing a wrongful act without just cause or excuse."

dance with this opinion. In all other respects, the judgment is affirmed.

KURT S. ODENWALD, P.J. and GEORGE W. DRAPER III, J., concur.