John SHIDDELL, et al., Appellant,

v.

The BAR PLAN MUTUAL,
et al., Respondent.

No. WD 74462.

Missouri Court of Appeals,
Western District.

July 31, 2012.

Scott A. McCreight, for Appellants.

Brent W. Baldwin, for Respondents.

Before Division Two: JOSEPH M. ELLIS, Presiding Judge, ALOK AHUJA, Judge and MARK D. PFEIFFER, Judge.

JOSEPH M. ELLIS, Judge.

John E. Shiddell, John G. Shiddell, Rosalie Shiddell, and Anchor Insurance Agency Inc. ("Appellants") appeal from a judgment entered in the Circuit Court of Jackson County granting summary judgment in favor of The Bar Plan Mutual Insurance Company ("The Bar Plan") in an equitable garnishment action filed by Appellants. Pursuant to a § 537.065[1] settlement agreement, Appellants had obtained a $4,500,000.00 judgment against The Bar Plan's insured, Dysart Taylor Lay Cotter & McMonigle, P.C. ("Dysart Taylor"), in an action for malicious prosecution, and Appellants challenged The Bar Plan's denial of coverage to Dysart Taylor for that judgment based upon a policy exclusion. For the following reasons, the judgment is affirmed.

___

1. All statutory references are to RSMo 2000 unless otherwise noted.

The Shiddells are the owners of the Anchor Insurance Company. In 1998, one of their customers, Alpha Omega Express, Inc., asked John G. Shiddell to add a company for which it performed contract work, Airborne Express, Inc., to Alpha Omega's business automobile policy with Cameron Mutual Insurance Company. Shiddell conveyed that request to Cameron Mutual which agreed and issued the appropriate certificates of insurance.

On April 4, 2002, David Dodson filed suit against Alpha Omega and Airborne Express claiming that one of their drivers had negligently caused an automobile accident that had left him paralyzed. Cameron Mutual hired Dysart Taylor to examine whether there was a way to avoid coverage for the accident. Kent Bevan, the attorney working on the case, examined the suit and the policy and determined that there was coverage.

Without any knowledge of any facts to support the claim, in an effort to get Appellant's E & O insurance carrier to contribute to pay a portion of Dodson's claim, Bevan filed suit against Appellants, on behalf of Cameron Mutual, alleging that they had forged the document adding Airborne Express as an additional insured to the Cameron Mutual policy after the Dodson accident. After litigating the case for about two years, long after Bevan was made aware that the claim was baseless, when the E & O carrier refused an offer of mediation, Bevan dismissed the action against Appellants.

After the case was dismissed, Appellants filed a malicious prosecution action against Dysart Taylor and Bevan.[2] Dysart Taylor and Bevan sought coverage under a legal malpractice insurance policy they had with The Bar Plan. The Bar Plan offered to defend the case under a reservation of rights but noted that the policy excluded coverage for malicious and intentionally wrongful acts. The relevant exclusion in Dysart Taylor's malpractice insurance policy states that the policy does not provide coverage for any claim based upon or arising out of:

> Any dishonest, deliberately fraudulent, criminal, malicious or deliberately wrongful acts or omissions by an Insured; however, the Company will provide a defense for any claim alleging such acts or omissions by an Insured acting in a professional capacity providing Legal Services ... but the Company will not pay any sums the Insured shall become legally obligated to pay as Damages for any such Claim. This exclusion is waived with respect to each Insured who did not know of, or participate or acquiesce in, the act or omission ... However, under no circumstances will the Company provide a defense for any criminal prosecution.

When Dysart Taylor and Bevan demanded that The Bar Plan assume their defense unconditionally, The Bar Plan declined, and Dysart Taylor and Bevan assumed their own defense. Shortly thereafter, Dysart Taylor and Bevan entered into a § 537.065 settlement agreement with Appellants. Pursuant to that agreement, Dysart Taylor agreed to confess liability and stipulate damages of $4,500,000.00 in exchange for the dismissal of Bevan from the case and an agreement by Appellants to limit execution of the judgment to proceeds that could be obtained from Dysart Taylor's malpractice insurance policy with The Bar Plan.

---

**2.** Cameron Mutual was also named as a defendant but later settled Appellants' claims against it.

Following an evidentiary hearing, the trial court approved the settlement agreement and entered judgment in favor of Appellants and against Dysart Taylor. The judgment stated:

> On the malicious prosecution claims of plaintiffs against defendant Dysart Taylor Lay Cotter & McMonigle, PC, judgment is entered in favor of the plaintiffs and against Dysart Taylor. The Court finds that an ordinarily careful lawyer in the position of Dysart Taylor, after making a reasonable inquiry, would not have believed the facts alleged against the plaintiffs or that the underlying judicial proceeding against the plaintiffs was valid. The Court further finds that the conduct of Dysart Taylor was not dishonest, deliberately fraudulent, criminal, deliberately wrongful, or motivated by actual malice. Rather, the conduct of Dysart Taylor was motivated by legal malice. In other words, Dysart Taylor initiated and continued civil proceedings against the plaintiffs primarily for a purpose other than that of securing the proper adjudication of the claims on which they were based.

The court then awarded the plaintiffs a total of $4,500,000.00 on that claim.

After that judgment became final, Appellants filed their petition against The Bar Plan in the Circuit Court of Jackson County seeking equitable garnishment of the policy limits of Dysart Taylor's legal malpractice policy. Shortly after filing its answer to the petition, The Bar Plan filed its motion for summary judgment, contending that the judgment against Dysart Taylor was not covered under the plain language of the policy and that it was entitled to judgment as a matter of law. In response, Appellants argued that the term "malicious" was ambiguous and, interpreted in the manner most favorable to Appellants, would not preclude coverage of the judgment against Dysart Taylor because the judgment was based upon a finding of legal malice and not actual malice. They further claimed that the term 'deliberately wrongful act' was ambiguous and would not apply to the judgment against Dysart Taylor if interpreted liberally in their favor. Appellants also claimed that Dysart Taylor was an "innocent insured" under the policy and that the exclusion, therefore, did not apply to bar coverage.

After taking the matter under advisement, the trial court eventually entered summary judgment in favor of The Bar Plan. The trial court noted:

> In this case, the parties do not dispute that 'legal malice' is the appropriate element applicable to lawyers and law firms, and recognized in Missouri for lawyers being sued for malicious prosecution. Where a policy is written for lawyers, and the element of malice applicable to lawyers is legal malice, it follows that the term 'malicious' as found in the 'Exclusions' section of the policy be defined as legal malice.

The trial court further found:

> By consenting to a judgment for malicious prosecution, an intentional tort, Dysart's conduct is also a deliberately wrongful act. The underlying judgment states that "Dysart ... *initiated* ... civil proceedings against plaintiffs *primarily for a purpose* other than that of securing the proper adjudication of the claims on which they are based." Purposeful conduct is intentional conduct which is deliberate conduct.

The court rejected Appellants' argument that Dysart Taylor was entitled to rely on the innocent insured waiver exception in the policy. Appellants bring two points on appeal from that judgment.

Because the trial court makes its decision to grant summary judgment based upon the record submitted and the law,

this Court need not defer to the trial court's determination and reviews the grant of summary judgment *de novo. Crow v. Kansas City Power & Light Co.,* 174 S.W.3d 523, 533 (Mo.App. W.D.2005). In so doing, we apply the same criteria as the trial court to determine whether summary judgment was properly entered. *Bauer v. Farmers Ins. Co.,* 270 S.W.3d 491, 494 (Mo.App. W.D.2008). Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. *Id.* "[A] 'genuine issue' exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 382 (Mo. banc 1993). "The record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record." *Hammack v. Coffelt Land Title, Inc.,* 284 S.W.3d 175, 177–78 (Mo.App. W.D.2009) (internal quotation omitted). "However, facts contained in affidavits or otherwise in support of the party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* at 178 (internal quotation omitted).

■ In their first point, Appellants contend that the circuit court erred in entering summary judgment in favor of The Bar Plan because the terms "malicious" and "deliberately wrongful" contained in Dysart Taylor's insurance policy were ambiguous and could be interpreted in a manner that would afford coverage. "In general, an insurance policy is a contract to afford protection to an insured and will be interpreted, if reasonably possible, to provide coverage." *Haulers Ins. Co. v. Pounds,* 272 S.W.3d 902, 905 (Mo.App. S.D.2008) (internal quotation omitted). "Where an insurer seeks to deny coverage based on a policy exclusion, the burden of establishing that the exclusion applies lies with the insurer." *Id.*

■ "The interpretation of an insurance policy, and the determination whether coverage and exclusion provisions are ambiguous, are questions of law that this Court reviews *de novo.*" *Burns v. Smith,* 303 S.W.3d 505, 509 (Mo. banc 2010). "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Id.* (internal quotation omitted). "When interpreting the terms of an insurance policy, this Court applies the meaning that would be understood by an ordinary person of average understanding purchasing the insurance." *Schmitz v. Great Am. Assur. Co.,* 337 S.W.3d 700, 705–06 (Mo. banc 2011).

■■ Appellants' claim against Dysart Taylor was for malicious prosecution. "Generally, a plaintiff may recover damages resulting from the initiation of a civil action where such action was prosecuted maliciously and without probable cause or was an abuse of process." *Diehl v. Fred Weber, Inc.,* 309 S.W.3d 309, 318 (Mo.App. E.D.2010). To prevail on their civil malicious prosecution claim against Dysart Taylor, Appellants were required to prove (1) the commencement of an prior lawsuit against Appellants, (2) that the prior lawsuit was instigated by Dysart Taylor, (3) that the prior lawsuit was terminated in favor of the Appellants, (4) a lack of probable cause to support the action, (5) malice on the part of Dysart Taylor in initiating or continuing the suit, and (6) that Appellants suffered damages as a result of the

lawsuit. *King v. Young*, 304 S.W.3d 224, 227 (Mo.App. E.D.2009).

█ In cases against non-attorneys, a showing of malice in law is all that is required to support a malicious prosecution claim. *Id.* "Malice in the law requires only that the suit was intentionally initiated or continued without the honest belief that it was lawful when done." *Id.* (internal quotation omitted). "Malice in law imputes malice from the mere intentional doing of a wrongful act to the injury of another without legal justification or excuse." *First Nat. Bank of St. Louis v. Ricon, Inc.*, 311 S.W.3d 857, 868 n. 3 (Mo. App. E.D.2010).

█ "The malice required to support a malicious prosecution action against an attorney differs from the malice required on the part of [a] non-attorney defendant." *Macke Laundry Serv. Ltd. Partnership v. Jetz Serv. Co.*, 931 S.W.2d 166, 179 (Mo. App. W.D.1996). "[T]he test to establish malice on the part of an attorney depends on whether the attorney acted upon a statement of facts provided by the client, or whether the attorney obtained the information acted upon." *Id.* at 179–80. Where the attorney acts solely upon facts related by the client, malice is shown by demonstrating that (1) the attorney knew that there was no probable cause for the prosecution and (2) the attorney knew that the client was acting solely through improper motives. *Id.* at 180. Where an attorney acts after his or her own investigation, however, malice is proven by demonstrating that (1) the attorney knew that there was no probable cause for the prosecution of the action and (2) the attorney's primary purpose for initiating or continuing the proceedings was something other than securing a proper adjudication of the claim. *Id.*; *King*, 304 S.W.3d at 227–28. These tests for malice on the part of an attorney are consistent with the common law definition of malice by an attorney: "(1) the attorney must know that there is no probable cause for the prosecution; and (2) either the attorney acted with an improper motive or the attorney knew that the client was motivated by malice." *Macke Laundry Serv.*, 931 S.W.2d at 180 n. 7.

█ Thus, to support a claim of malicious prosecution against an attorney where, as here, the attorney has performed his or her own investigation, the plaintiff must prove that the attorney pursued a lawsuit, knowing it to be unsupported by probable cause, for a primary purpose other than securing a proper adjudication of the claim.[3] This is a deliberately wrongful, as well as a legally mali-

---

**3.** Appellants suggested at oral argument that a claim for malicious prosecution against an attorney only requires proof of reckless indifference, relying upon the definition of "maliciously" contained in MAI 16.01(2), which includes reference to "acting with reckless indifference to the rights of others." Notably, that instruction is only applicable "in Malicious Prosecution Cases Arising Out of Criminal Actions" and, therefore, has no relevance to this case. Further, we do not believe that the standard malice in law definition of "maliciously" in MAI 16.01(1), setting forth the definition for use in civil malicious prosecution actions, conforms to the substantive law applicable to an action against an attorney where the attorney has performed his own investigation because case law clearly requires a showing of legal malice through proof "that the primary purpose for initiating or continuing the proceeding was one other than that of securing the proper adjudication of the claim." *Macke Laundry Serv. Ltd. Partnership v. Jetz Serv. Co.*, 931 S.W.2d 166, 180 (Mo.App. W.D.1996); *King v. Young*, 304 S.W.3d 224, 228 (Mo.App. E.D.2009). But, even if MAI 16.01(1) was applicable, that instruction defines "maliciously" as "*intentionally doing a wrongful act* without just cause or excuse" and makes no reference to recklessness. (emphasis added).

cious, act. "[I]f one intentionally does a wrongful act and knows at the time that it is wrongful, he does it wantonly and with a bad motive. This definition is virtually indistinguishable from the definition of legal malice." *Burnett v. Griffith,* 769 S.W.2d 780, 788 (Mo.1989) (emphasis omitted).

While Appellant's argue that the "deliberately wrongful acts" language in the policy exclusion is ambiguous and could be interpreted in a manner that would allow coverage, they attempt to manufacture ambiguity where none exists. They claim the phrase is ambiguous as a result of the *nosccitur a sociis* rule of statutory construction that "[t]he meaning of a word can be ascertained by referring to other words or phrases associated with it." *State v. Bratina,* 73 S.W.3d 625, 627 n. 5 (Mo. banc 2002). Appellants note that the phrase "deliberately wrongful acts" is included in the same sentence with the terms "dishonest," "deliberately fraudulent," "criminal," and "malicious." They then contend that these terms are all limited to illegal activity and that "deliberately wrongful" should be read to be similarly limited because all ambiguities should be resolved in favor of the insured.

Appellants rely upon a rule of construction in an attempt to create ambiguity where there is none. Rules of construction are, however, only to be utilized where an ambiguity already exists. *Kelly v. Marvin's Midtown Chiropractic, LLC,* 351 S.W.3d 833, 836 (Mo.App. W.D.2011). "If the language in an insurance contract is clear and unambiguous, this Court must construe the contract as written." *Gavan v. Bituminous Cas. Corp.,* 242 S.W.3d 718, 720 (Mo. banc 2008) (internal quotation

omitted). "Thus, this Court will give terms their plain and ordinary meaning unless it is clear from the policy that the parties intended an alternate meaning." *Id.*

The "deliberately wrongful acts" exclusion is unambiguous. *Mendel v. Home Ins. Co.,* 806 F.Supp. 1206, 1210–11 (E.D.Penn.1992). *Black's Law Dictionary* defines a "wrongful act" as "[a]ny act which in the ordinary course will infringe upon the rights of another to his damage, unless it is done in the exercise of an equal or superior right."[4] *Black's Law Dictionary 6th ed.* at *1612 (1990). This definition is consistent with what an ordinary person purchasing the policy would understand a wrongful act to be and certainly what an ordinary attorney would understand the phrase to mean. The policy further restricts the application of the exclusion to wrongful acts committed deliberately, but deliberate is not synonymous with criminal. No ordinary person of reasonable intelligence would interpret the term "deliberately" to mean "criminally." The "deliberately wrongful act" exclusion simply cannot be read to be limited to only criminal acts as asserted by Appellants.

As noted *supra,* to support a claim of malicious prosecution against an attorney where, as here, the attorney has performed his or her own investigation, the plaintiff must prove that the attorney pursued a lawsuit, known to be unsupported by probable cause, for a purpose other than securing the proper adjudication of the claim. This is undoubtedly a "deliberately wrongful act" under the plain and ordinary meaning of those terms. Thus, as a matter of law, Appellants' claim of

4. The definition goes on to note the "[t]erm is occasionally equated to term 'negligent,' but generally has been considered more comprehensive term, including criminal, willful, wanton, reckless and all other acts which in ordinary course will infringe upon rights of another to his damage." *Black's Law Dictionary 6th ed.* at *1612 (1990).

malicious prosecution was clearly excluded under the policy language.

The gratuitous findings contained in the judgment entered in favor of Appellants and against Dysart Taylor, which was submitted to the court by Appellants at the end of the § 537.065 hearing, do not change this fact. As noted *supra*, that judgment states:

> The Court finds that an ordinarily careful lawyer in the position of Dysart Taylor, after making a reasonable inquiry, would not have believed the facts alleged against the plaintiffs or that the underlying judicial proceeding against the plaintiffs was valid. The Court further finds that the conduct of Dysart Taylor was not dishonest, deliberately fraudulent, criminal, deliberately wrongful, or motivated by actual malice. Rather, the conduct of Dysart Taylor was motivated by legal malice. In other words, Dysart Taylor initiated and continued civil proceedings against the plaintiffs primarily for a purpose other than that of securing the proper adjudication of the claims on which they were based.

These findings purport to support the malicious prosecution judgment without the requisite finding to establish legal malice that Dysart Taylor knew that there was no probable cause to support the prosecution of the lawsuit. Moreover, the affirmative finding that Dysart Taylor did not act in a deliberately wrongful manner is inconsistent with the finding of the existence of legal malice, as discussed *supra*. These findings, or lack thereof, are superfluous and unnecessary to the judgment, however, because Dysart Taylor admitted liability for Appellant's malicious prosecution claims. The garnishment court did not err in finding that Dysart Taylor's insurance policy with The Bar Plan excluded coverage for Appellant's malicious prosecution claim.[5] Point denied.

■ In their second point, Appellants contend that the garnishment court erred in entering summary judgment against them because they produced evidence establishing that Dysart Taylor was an "innocent insured" under the language of the insurance policy and, therefore, entitled to coverage for Appellants' claims. The exclusion for "dishonest, deliberately fraudulent, criminal, malicious or deliberately wrongful acts or omissions" is waived in the policy "with respect to each Insured who did not know of, or participate or acquiesce in, the act or omission." Appellants argue that the evidence reflects that Dysart Taylor was unaware of the actions taken by Bevan and an associate attorney in Cameron Mutual's lawsuit against Appellants and was, therefore, entitled to the benefit of this provision.

■ As a corporation, Dyson Taylor "can obtain knowledge only through its agents and, under the well-established rules of agency, the knowledge of agents obtained in the course of their employment is imputed to the corporation." *Wandersee v. BP Products N. Am., Inc.*, 263 S.W.3d 623, 629 (Mo. banc 2008). Thus, "the knowledge of an agent of a corporation with reference to a matter within the scope of [his or her] authority and employment and to which his authority or employment extends must be imputed to the corporation" as a whole. *Id.*

The undisputed facts reflect that, at all relevant times, Bevan was a shareholder and director of Dysart Taylor and was the

5. Having reached this conclusion, we need not address Appellants' claim that the recognition of three different types of malice under Missouri case law renders the language excluding malicious acts ambiguous and mandates restriction of the language to exclude only acts of actual malice.

supervisory attorney in charge of the case filed against Appellants. Accordingly, Bevan's knowledge of the facts and the nature of his actions in Cameron Mutual's lawsuit against Appellants must be imputed to the corporation. Dysart Taylor, therefore, cannot be deemed to be an "innocent insured" under the language of the policy.[6] Point denied.

The judgment is affirmed.

All concur.

**6.** The Bar Plan conceded at oral argument that this waiver of the exclusion for "dishonest, deliberately fraudulent, criminal, malicious or deliberately wrongful acts or omissions" is applicable to provide coverage to partnerships and sole proprietorships. This concession was also acknowledged in The Bar Plan's briefing before this Court and the trial court, wherein The Bar Plan stated:

The provision protects an insured lawyer (whether a sole proprietor owner or formal partnership) who is being sued individually for the bad acts of a fellow partner. It protects lawyers in joint ventures, and a multitude of other situations, with a common theme: "The waiver protects individual personal liability of innocent individuals where another individual has caused them to incur personal liability."